[Crim. No. 3852. First Dist., Div. One. Apr. 4, 1961.]

THE PEOPLE, Respondent, v. KENNETH EVERETTE BRYAN, Appellant.

Martin N. Pulich, Public Defender, John D. Nunes, Chief Assistant Public Defender, Stephen W. Shaughnessy and R. Donald Chapman, Assistant Public Defenders, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Derald E. Granberg, Deputy Attorneys General, for Respondent.

BRAY, P. J.—Defendant appeals from a conviction, after jury verdict, of violation of section 203, Penal Code (mayhem), and from the denial of his motion for new trial.

### QUESTIONS PRESENTED

1. Exclusion of offered testimony by judo expert.
2. Refusal to instruct that battery is an included offense.

### EVIDENCE

Rodolphe Andre, who had had two or three drinks at the Garden Inn, arrived at Millie's Café about 12:45 a. m. There he and a friend, Richard McClintock, met defendant, a person named Carl, and two other men who were sitting at a table. After some conversation Andre invited the group out for a drink at his car where he had some liquor. There then followed an amount of drinking by all parties and several trips between the car and the café by defendant and Carl. An argument started between McClintock and Carl, but was settled short of violence. Later the conversation turned to the subject of judo. Both Andre and defendant indicated familiarity with the subject, each claiming a certain degree of proficiency in it. Andre challenged defendant to a judo match, but suggested that it be delayed until both were sober.

The evidence is conflicting as to what prompted the affray which followed, and what occurred during the fight. Andre,

the complaining witness, testified that he and McClintock were preparing to go into Millie's for coffee when defendant shoved his shoulder. Andre prepared to go into the judo stance and simultaneously with his grabbing defendant's shoulders, defendant grabbed Andre's nose in his teeth. Andre was familiar with a certain judo choke hold, and admitted that he was aware that it could be fatal. Although at the preliminary examination Andre's testimony is not clear as to whether he might not have placed the judo hold on defendant before defendant bit his nose, at the trial he was positive that he did not use such hold until after his nose was bitten. He admitted that he might have tried to use this hold on defendant *after* defendant had seized his nose with his teeth, but said that he did not recall doing so.

Defendant testified that he offered to buy the group coffee, and that they were all outside the car when Carl pointed out that Andre was moving toward him in an aggressive manner. Defendant removed his coat, handed it to Carl, and he and Andre came in contact. They both fell to the ground and while they were there, Andre placed a judo choke hold on him. Acting in fear of his life, defendant scratched, clawed, kneed and bit Andre. Defendant testified that he bit a piece of Andre's nose off, spit it out and ''got another one, bit him again.'' Defendant claimed that he bit Andre only after the latter had placed the choke hold on him and that defendant did so to save his own life. Both Andre and defendant agreed that a fight had occurred, and that during its course defendant had bitten off the end of Andre's nose and a portion of his cheek.

### 1. *The Judo Expert's Offered Testimony.*

Defense counsel made an offer to prove by a witness expert in judo certain matters hereafter discussed. The court refused to admit testimony in accordance with the offer of proof, on the ground that there was no dispute on the points stated. But there really was an issue as to which some portions of the offered proof would have been relevant. The case resolved itself into one issue: When was the bite applied? Before Andre placed the judo hold on defendant or after? The district attorney so stated: ''If the defendant is telling the truth about Andre attacking him and putting a choke hold on him and realizing that he was going to expire if he didn't get out of it, he bit in self defense, there is no question, if that set of facts occurred, I would be perfectly willing to

stipulate that self defense is there as a matter of law and fact.'' The offer of proof was to the effect that the witness (1) would have described the judo choke hold which defendant said Andre had applied; (2) how and from what positions such a hold could be applied (the purpose of this testimony was to show that the hold could be applied while the opponents were facing each other); (3) the reactions usually manifested by the victim of such a hold such as biting, clawing, kicking, and how many seconds the victim has to react in before losing consciousness; also how many ounces of pressure must be applied before the victim is strangled; (4) the possibility of the victim being able to bite the face of his assailant, even though in the grip of the hold.

While some of the offered testimony probably dealt with matters where the testimony of Andre and defendant was not opposed, most of this offered testimony was important to defendant's defense. Defendant testified that he bit Andre's nose after Andre had applied the judo hold and while they were rolling on the floor. Andre testified that it was before and while they were standing. Thus it was important for the jury to know whether such hold could or could not be applied while the parties were in the position testified to by defendant, particularly whether or not it would be possible for a person in the judo hold to bite the holder's nose. A description of the hold shows that the holder's arm is under the other's chin, making it appear difficult for that other to open his mouth. The hold apparently is one suddenly and forcibly applied. Would the person on whom it is applied have time to act as defendant testified he did? Judo is a tactic with which very few people are familiar. The fact that defendant testified that the biting could and did happen that way, would not make evidence to support his testimony in that respect cumulative under the rule that the court may exclude testimony which is merely cumulative. That defendant needed support for his testimony is well illustrated by the fact that in argument the prosecuting attorney seemed to claim that were defendant in the grip he claimed to have been in, it would have been impossible for him to have bitten off Andre's nose. In urging that defendant's story was an ''impossible'' one, the prosecuting attorney stated that if Andre were able to apply the hold which defendant testified he did ''while rolling around, do you think that he ever would have gotten out of it?'' Again, he stated that if Andre had obtained ''this kind of a strangle hold . . . there wouldn't have been any biting

of any kind . . . I suggest to you that that just couldn't happen.''

■ '' 'All facts having rational probative value are admissible, unless some specific rule forbids.' (1 Wigmore on Evidence [3rd ed. 1940], § 10, p. 293; and *cf.* Code Civ. Proc., § 1868.) ■ The general test of relevancy of indirect evidence is whether it tends logically, naturally, and by reasonable inference to prove or disprove a material issue. [Citations.]'' (*People* v. *Jones* (1954), 42 Cal.2d 219, 222 [266 P.2d 38].)

■ Ordinarily it is doubtful if expert testimony to the effect that a thing could have happened the way defendant says it did, would be admissible. But here, particularly in view of the attitude of the district attorney that the biting could not have happened as defendant said it did, in a situation as to which the jury itself would have little information, it is highly relevant and admissible. The trial court was correct in stating that ''If the testimony of the defendant is to be believed, then he should be found not guilty on the ground of self defense.'' But in determining whether he was to be believed, it was important to know whether or not the application of the choke hold would make it impossible to do any biting.

Respondent is in error in stating that Andre testified that biting could occur while the victim is in the choke hold. His testimony was all on the theory that he was bitten before the choke hold was applied.

Applicable here is the language in *People* v. *Matlock* (1959), 51 Cal.2d 682 [336 P.2d 505]: ''[T]he unusual nature of his [the defendant's] story make[s] it more, not less, important that he be accorded full opportunity to corroborate that story by any available admissible evidence.'' [P. 690.] Here it was not only the story which was unusual but the fact that both participants were engaging in a rather unusual activity, to wit, judo.

Respondent contends that in denying admission to the offered evidence the court was properly acting within its discretion. The court has wide discretion in this respect (*People* v. *Baltazar* (1958), 159 Cal.App.2d 595, 599 [323 P.2d 1062]), but it may not exclude corroborating testimony which is vital to support defendant's defense, particularly where, as here, the defendant's version of the occurrence is so diametrically opposed to that of the prosecuting witness and there is

no evidence on the subject other than the defendant's own testimony.

''The tendency of modern decisions is to admit any evidence which may have a tendency to illustrate or throw any light on the transaction in controversy, or give any weight in determining the issue, leaving the strength of such tendency or the amount of such weight to be determined by the jury; and in determining the relevancy of evidence that may be offered upon an issue of fact much depends upon the nature of the issue to sustain which or against which it is offered, and a wide discretion is left to the trial judge in determining whether it is admissible or not. Mr. Thayer, in the introduction to his 'Cases on Evidence,' says: 'No precise or universal test of relevancy is furnished by the law. The question must be determined in each case according to the teachings of reason and judicial experience'; and Mr. Stephen, in his Digest of the Law of Evidence, says (chapter I) : 'The word "relevant" means that any two facts to which it is applied are so related to each other that, according to the common course of events, one, either taken by itself or in connection with other facts, proves or renders probable the past, present or future existence or nonexistence of the other.' '' (*Moody* v. *Peirano* (1906), 4 Cal.App. 411, 418 [88 P. 380].) The court there then points out that (as here) the credibility and weight to be given to the defendant's testimony was the issue to be determined, and stated (p. 418) : ''Evidence of any collateral fact which had a legal bearing in determining these questions was relevant and admissible, and entitled to consideration.'' The court upheld the admission of such testimony.

''[I]n a close case [and this one was, as its determination depended primarily upon which of the participants the jury chose to believe] where the evidence is sharply conflicting, substantial and serious errors vital to the defendant that *may* have resulted in a miscarriage of justice must be regarded as prejudicial and grounds for reversal.'' (*People* v. *Dail* (1943), 22 Cal.2d 642, 650 [140 P.2d 828] ; emphasis added.)

2. *Battery Is Not an Included Offense.*

As the case will have to be retried and this question may arise, it is necessary that we determine it.

Defendant offered instructions to the effect that battery is a lesser offense included in the charge of mayhem. The court refused to give them. It instructed that either defendant

was guilty of mayhem or that "the mayhem was justified in that the defendant Bryan was acting in self defense" and that if the jury found defendant to be the initial aggressor his right of self-defense was limited. ▮ A defendant is entitled to an instruction on any included offense which the evidence tends to prove. (*People* v. *Burns,* 88 Cal.App.2d 867, 871 [200 P.2d 134].)

▮ Mayhem includes an act plus a prerequisite state of mind. The act here was the biting of Andre's nose. In mayhem, the actor must have a state of mind characterized by the words unlawful and malicious. Malice as used in section 203, Penal Code (mayhem), is defined in section 7, subdivision 4, Penal Code. It imports an intent to vex, annoy, or injure another person, or an intent to do a wrongful act. Defendant contends that there was a factual dispute as to his intent, and that therefore the jury should have been told that it might find that a battery occurred. However, under the facts of this case there could not have been a battery. Either the biting was in self-defense or it was done with intent to injure Andre maliciously. Obviously the deliberate biting off of a piece of a person's nose, spitting it out and again biting the nose, if it were not an excusable act because done in self-defense, could not be anything but mayhem.

▮ Even assuming that battery were an included offense, the court was justified in not giving the instructions on battery, for where the evidence is such as to make it clear that if a defendant is guilty at all he is guilty of the greater offense, the court should refuse to instruct on a lesser offense. (*People* v. *McCoy,* 25 Cal.2d 177, 187 [153 P.2d 315] ; *People* v. *Watson,* 173 Cal.App.2d 440, 445 [343 P.2d 323].) The court under the circumstances here properly refused to instruct that battery was an included offense.

The judgment and order are reversed.

Tobriner, J., and Duniway, J., concurred.

A petition for a rehearing was denied April 25, 1961, and respondent's petition for a hearing by the Supreme Court was denied May 31, 1961.