[No. F004417. Fifth Dist. Jan. 10, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
BERNIE LOPEZ, Defendant and Appellant.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Allan H. Keown, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally and Susan Rankin Bunting, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CASTELLUCCI, J.***—Defendant, Bernie Lopez, was convicted by jury trial of mayhem (Pen. Code, § 203) with the additional finding that he used a deadly and dangerous weapon within the meaning of Penal Code section 12022, subdivision (b).[1] He appeals claiming instructional error. We affirm.

### STATEMENT OF THE CASE

An information was filed against the defendant charging him with two crimes arising from the same incident. Count one alleged a violation of section 203, mayhem, with the additional allegation that he used a deadly weapon during the commission of the offense. (§ 12022, subd. (b).) Count two charged a violation of section 245, subdivision (a)(1), assault with a deadly weapon, with the additional allegation that he intentionally inflicted great bodily injury during the assault within the meaning of section 12022.7.

Jury trial commenced on May 7, 1984. Prior to its deliberations the jury was instructed on the law. These instructions included CALJIC No. 9.30 (1979 revision), mayhem defined. The jury returned its verdict finding defendant guilty of count one as charged and not guilty of count two as charged.

---

*Assigned by the Chairperson of the Judicial Council.
[1]All code section references shall be to the Penal Code unless otherwise noted.

On June 12, 1984, defendant was sentenced to state prison for the lower term of two years with a one year enhancement for the section 12022, subdivision (b) violation, for a total of three years.

## Statement of Facts

On the evening of February 9, 1984, Jesus Ramos, Raul Morales, Esther Gomez and Sylvia Flores got together to play cards, and later left to get a pizza. Esther was driving the car; Raul was in the front seat on the passenger side; Jesus was in the back seat on the passenger side; and Sylvia was in the back seat on the driver's side. They drove up to the pizza parlor and parked the car under the balcony area of an apartment. There were several individuals on the balcony including the defendant and two of his brothers. Sylvia got out of the car and went inside to order the pizza. She returned to the car to wait for the pizza. The defendant's brother, Victor, spat on the car from the balcony. Defendant and his brother George came down from the balcony and approached the car. The defendant was carrying two beer bottles. George asked Raul and Jesus if they "had any shit with their boy Steve." The window of the car was partially down and George attempted to punch Jesus through the opening. The defendant stated to his brother "Let's jam" because there were ladies in the car. George and the defendant started to walk away, George returned and opened the car door and defendant threw a beer bottle into the car striking Raul in the left eye. Another bottle was thrown from the balcony area which struck and broke the windshield of the car. Sylvia, Jesus, Esther and Raul then drove off as George continued to try to attack Jesus.

The trauma to Raul's left eye from the blow resulted in his being legally blind in that eye. The chance for improvement in his vision is "very slight."

*Defense:*

George Lopez and the defendant testified similarly to the prosecution witnesses with the exception that George testified that the defendant did not have a beer bottle in his hands and George and defendant both testified that when the defendant said to "back off" they walked away from the car. As they were walking away they heard beer bottles being thrown. Defendant testified he did not throw a beer bottle.

## Does the 1979 Revision of CALJIC No. 9.30 Impermissibly Broaden the Statutory Definition of Mayhem by Stating That a Malicious Intent Can Be an Intent to Vex or Annoy?

Section 203 defines mayhem as follows: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or dis-

ables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem."

The jury was instructed pursuant to CALJIC No. 9.30 (1979 revision) as follows: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or who cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of the crime of mayhem.

"In order to find defendant guilty of the crime of mayhem, each of the following elements must be proved:

"1. That defendant unlawfully and by means of physical force put out the eye of another person, and

"2. That defendant did so maliciously, that is, with an unlawful intent to vex, annoy, or injure another person."

Defendant asks this court to undertake a fresh examination of the mens rea aspect of this standardized CALJIC instruction. While recognizing that the Legislature did not incorporate a specific intent requirement as one of the elements of mayhem, defendant contends that the intent to vex and annoy impermissibly broadens the type of conduct which is statutorily proscribed by section 203 and is therefore not "statutorily authorized." Furthermore, defendant asserts that the instruction may also be viewed as violative of the doctrine of stare decisis. His final attack on the instruction is that the verbs "vex and annoy" are so vague and uncertain that sufficient notice as required by the federal and state Constitutions is not provided to people accused of violating section 203. Defendant asserts that the instructional error should be held reversible per se, and if not reversible per se, requires reversal in any event based upon the particular facts of this case.

Respondent contends that the instruction is proper. Respondent bases this assertion on section 7 which defines malice and maliciously as including a wish to vex or annoy. Therefore, CALJIC No. 9.30 "contains the precise statutory language defining the crime of mayhem." Respondent does not address defendant's other attacks upon the terms vex or annoy.

It is necessary to undertake a somewhat detailed analysis of the inclusion of "vex or annoy" in the jury instruction since it appears that this is a theory which the jury considered seriously when reaching its verdict. During its deliberations the jury sent out two notes. The first note requested a rereading of Sylvia's testimony, in particular where the defendant was when the bottle was thrown and whether "it was aimed or just thrown at the car."

The other note requested Raul's testimony concerning whether the defendant "took aim with the bottle or if he merely saw a blur and turned and saw the bottle coming toward him."

A. *Is the inclusion of vex or annoy in CALJIC No. 9.30 statutorily unauthorized?*

 Defendant's argument that the inclusion of the terms to vex or annoy in the standard mayhem instruction is not statutorily authorized must fail. Section 7 provides in pertinent part: "The following words have in this code the signification attached to them in this section, unless otherwise apparent from the context:

". . . . . . . . . . . . . . . . . . . . .

"4. The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law; . . ."

Section 203 requires that the defendant must act maliciously. Section 7, subdivision 4 defines "maliciously" and includes within that definition the wish to vex or annoy. Thus, the expansion of CALJIC No. 9.30 to include vex or annoy as a part of the intent requirement is expressly authorized by statute.

B. *Does the inclusion of vex or annoy in CALJIC No. 9.30 violate the doctrine of stare decisis?*

Citing *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937], defendant contends that the extension of CALJIC No. 9.30 to include the terms vex or annoy broadens the type of conduct proscribed by Penal Code section 203 as interpreted in *People* v. *Wright* (1892) 93 Cal. 564 [29 P. 240], and thus is violative of the doctrine of stare decisis. We conclude this contention is unsound.

■ "Under the doctrine of *stare decisis,* all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. . . . It is not their function to attempt to overrule decisions of a higher court." (*Auto Equity Sales, Inc.* v. *Superior Court, supra,* 57 Cal.2d 450, 455.)

In *People* v. *Wright, supra,* 93 Cal. 564, the court was called upon to decide whether the crime of mayhem required premeditation or deliberation. The court held that premeditation was not required and that the requisite

intent was "maliciously" as found in section 7, subdivision 4. The court then quoted this section as follows: " 'The words "malice" and "maliciously" import a wish to . . . . injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.' " (*Id.* at p. 566.) In its opinion the court left out the words vex or annoy from section 7, subdivision 4, which were part of the statute at that time and have remained a part of the statute to the present time. The court set forth the requirements of the mayhem statute stating that the requirements would be fully met ". . . by proof of the commission of the act, from which the law will presume, though it be done in pursuance of an intent formed during the conflict, that it was done unlawfully and maliciously,—that is, 'with a wish to . . . . injure another person, or an intent to do a wrongful act,'—unless the evidence tends to show to the contrary,—that is, that it was done in necessary self-defense, and under circumstances that were at the time unavoidable, in order to prevent the infliction or attempted infliction of some great bodily harm by the party injured." (*Id.* at pp. 566-567.)

██ Although this statement in *Wright* of the requirements needed to sustain a mayhem conviction is binding upon this court under the doctrine of stare decisis, stare decisis does not limit the intent requirement only to the intent to injure nor does it prohibit the use of the intent to vex or annoy as a sufficient intent. ██ It is a fundamental rule of stare decisis that a decision is authority only for the points actually involved and actually decided. (*Childers* v. *Childers* (1946) 74 Cal.App.2d 56, 61 [168 P.2d 218].)

In *Wright,* the defendant got in a fight with another individual. The victim attempted to separate the combatants. While the victim had a hold of the defendant, the defendant threw his arm around the victim's neck, "and seizing his ear with his teeth, bit a part of it off." (*Id.* at p. 566.) From these facts it is clear that the defendant's intent was to injure and one would be hard pressed to say the defendant intended only to "vex or annoy" the victim. Thus, the *Wright* court most likely deleted vex or annoy, the less despicable intents, from its discussion because they had no relevancy to the facts before it.

In all of the cases which have cited *Wright* in the context of a crime of mayhem, it was cited for the proposition that proof of specific intent is not necessary for a conviction for mayhem, or if the definition of mayhem set forth in *Wright* was quoted or used, the question of the scope of the word "maliciously" was not discussed or in issue. (*People* v. *Nunes* (1920) 47 Cal.App. 346, 349 [190 P. 486]; *People* v. *Vigil* (1966) 242 Cal.App.2d 862, 864-865 [51 Cal.Rptr. 860]; *People* v. *Garcia* (1970) 5 Cal.App.3d 15, 18 [85 Cal.Rptr. 36]; *Goodman* v. *Superior Court* (1978) 84

Cal.App.3d 621, 624 [148 Cal.Rptr. 799]; *People* v. *Sears* (1965) 62 Cal.2d 737, 744-745 [44 Cal.Rptr. 330, 401 P.2d 938].)

The *Wright* case, and those cases which have cited it, did not consider or decide whether the intent to vex or annoy was a sufficient intent to sustain a mayhem conviction, and they therefore have no precedential value under the doctrine of stare decisis.

The fact that the *Wright* court left out the terms vex or annoy when defining the requisite intent does not mean that their definition should be cast in stone since they were not faced with facts which would indicate the intent was anything other than to injure. They did not address the issue. Furthermore, other mayhem cases have defined the intent element of malice by describing the intent as one to vex, annoy or injure another person. (*People* v. *Bryan* (1961) 190 Cal.App.2d 781, 787 [12 Cal.Rptr. 361]; *People* v. *Reed* (1984) 157 Cal.App.3d 489, 492 [203 Cal.Rptr. 659].) Although defining the intent, these cases did not require a discussion of that intent in the context of the intent to vex or annoy versus the intent to injure.

C. *Are the terms vex or annoy so vague and uncertain that they violate constitutional principles of due process?*

Defendant's final attack on CALJIC No. 9.30 is that the terms vex or annoy are so vague and uncertain that sufficient notice, as required by the federal and state Constitutions, is not provided to people accused of violating section 203. This contention is also unsound.

■ "'[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.'" (*People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974].) "'". . . The dividing line between what is lawful and unlawful can not be left to conjecture. The citizens can not be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. *Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another!"'"* (*Drucker* v. *State Bd. of Med. Examiners* (1956) 143 Cal.App.2d 702, 709-710 [300 P.2d 197], italics in original.)

The void-for-vagueness doctrine rests upon the lack of fair notice of proscribed conduct. But when this conduct is already criminal in nature the essential element of lack of notice of proscribed conduct is missing. (*People v. Barksdale* (1972) 8 Cal.3d 320 [105 Cal.Rptr. 1, 503 P.2d 257].) "The fundamental test is whether a reasonable person in the position of the defendant would be apprised with reasonable certainty that his conduct is proscribed." (*People* v. *Williams* (1976) 59 Cal.App.3d 225, 231 [130 Cal.Rptr. 460], disapproved on other grounds in *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 257 [158 Cal.Rptr. 330, 599 P.2d 636].)

■ In the instant case, common sense would tell one that it is unlawful to hurl a beer bottle into an occupied vehicle. Such conduct foreseeably may result in injury to an occupant or damage to the vehicle. Thus, the defendant clearly had notice that his conduct was proscribed, whether it be under section 203 (mayhem) or other criminal statutes (for example, § 240, assault, § 242, battery, and § 594, vandalism).

■ Furthermore, the terms vex or annoy were used in CALJIC No. 9.30 not as separate intent but as a further definition of the term maliciously. The definition of maliciously as set forth in section 7, which includes an intent to vex or annoy, has been used since 1872. The Legislature deliberately acted in defining maliciously in section 7, subdivision 4, and stated that the words defined in the Penal Code have the signification attached to them in this section. ■ "'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears.'" (*In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296].)

The judgment is affirmed.

Hanson (P. D.), Acting P. J., and Hamlin, J., concurred.