[No. A034980. First Dist., Div. Two. Sept. 4, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE McKELVY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

\*Pursuant to rules 976 and 976.1, California Rules of Court, the introductory portions, part B of the Discussion, and the concurring opinion are certified for publication.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Linda Feldman, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Ronald E. Niver and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KLINE, P. J.**—George McKelvy appeals from convictions of mayhem (Pen. Code, § 203) and assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).) The jury found true allegations that appellant personally used a deadly weapon in the commission of both offenses (Pen. Code, §§ 12022, subd. (b), 1192.7, subd. (c)(23)) and found true an allegation that he intentionally inflicted great bodily injury in the commission of the assault. (Pen. Code, § 12022.7.) The court found that appellant had been convicted of a previous serious felony within the meaning of Penal Code sections 667 and 1192.7.

Appellant contends that the trial court committed prejudicial error in failing to instruct on felony assault and battery as lesser included offenses under the mayhem charge; in failing to instruct sua sponte that an honest but unreasonable belief in the need for self-defense negates the malice required for a mayhem conviction; in admitting a statement allegedly obtained in violation of appellant's *Miranda* rights; and in eliciting irrelevant evidence concerning an uncharged act of violence by appellant. We affirm.

### STATEMENT OF FACTS

About 6:30 p.m. on January 6, 1986, Brenda Birch ended her shift as a bartender at the Pioneer Bar in San Francisco and was sitting at a table in the bar with a friend, Charles Skolovsky. Birch had had two beers during the course of the day, much earlier, and was sipping another. Appellant, paralyzed from the chest down and confined to a wheelchair, entered the bar, picked up a pool cue and went to the pool table.

According to Birch, appellant came toward her, licking his lips and saying something like, "Baby, would I like to fuck you." Birch, directly facing appellant, began to stand up to verbally protest; before she could make a statement to appellant, he hit her in the left eye with a sudden upward thrust of the round end of the pool cue. Birch immediately lost sight in the eye; she spent five days in the hospital, had surgery on the eye, and will not regain her vision.

Skolovsky testified that as he was sitting at the table with Birch, he saw appellant a couple of feet from the opposite side of the table looking at Birch in a lecherous manner. Birch said something like, "Get out of here, you asshole." Skolovsky saw appellant hurl a cue stick directly at Birch's left eye and heard the eye split. Appellant had a look of satisfaction on his face. Birch had not hit appellant or interfered with his pool game. Appellant wheeled toward the door of the bar but was prevented from leaving by a

customer. Skolovsky had had four and a half beers since 4 p.m.; he felt "mellow" but could walk well and his perception was fine.

Paul Clattenburg, the bartender, saw appellant playing pool and bothering Birch; words were exchanged between the two and Birch told appellant to leave her alone. Clattenberg testified that appellant began to play pool, then backed up and hit Birch in the eye with a backward motion of his arm. Birch was still sitting and did not have weapons or anything in her hands. Clattenburg did not actually see the moment of impact; he was waiting on a customer and looked at Birch when he heard her start to scream. Appellant made some derogatory remarks to the bartenders and threw a pool ball across the bar at Clattenburg.

Police Officer Matthew Krimsky testified that he arrived with his partner at the Pioneer Bar about 7:10 p.m., having been instructed by radio broadcast to proceed there because of a barroom fight in progress. Krimsky observed Birch holding a towel to her left eye, which appeared to have been perforated and was flowing blood and a yellow fluid. She was not, in Krimsky's opinion, under the influence of alcohol. Birch told Krimsky that a Black man in a wheelchair had put out her eye with a pool cue. Krimsky walked over to appellant and asked what happened; appellant responded that "Birch fucked with me so I hit her."

Krimsky placed appellant under arrest, took him to the Hall of Justice and advised him of his *Miranda* rights. Appellant told Krimsky that he understood and wished to make a statement. The handwritten statement, largely illegible, was read into the record by Krimsky: "I, George McKelvy Jr., was play pool game when a woman came up to me and start giving me a lot of problem and spill my pool ball and call me—I can't make out the word—my name also, put the pool ball off the table and put a hit on me, came and I hit her. She hit me with a pool ball and I hit her back with pool stick back."[1]

Appellant testified that he had come to the bar with a friend to play pool. As he was waiting to play, Birch came over to him and told him he didn't belong in the bar and she wanted him to leave. She seemed drunk and appellant paid no attention to her. She was carrying a bottle from which she was drinking. Birch went and sat down, then returned as appellant was preparing to shoot. She still had the bottle in her hand, but this time seemed as though she was about to strike appellant with it. Appellant held the pool cue with both hands in front of himself and to keep his balance and "to

---

[1] When appellant described the statement, he indicated that the victim did not actually hit him but that he thought she was going to hit him.

protect myself because I was scared of her." Appellant lost balance and Birch, who was stumbling and drunk, fell into the cue. Appellant fell from the wheelchair, his friend helped him up and appellant stayed where he was until the police came. The injury to Birch was an accident.

Appellant denied speaking with Officer Krimsky at the bar. He testified that he spoke with Krimsky's partner, telling him the same version of the events as he related at trial. Appellant denied stating that "Birch fucked with me while I was playing pool so I hit her." As for his written statement, appellant testified that he wrote that he hit Birch because he did not know how to write what happened; he did not actually hit her, but was afraid that she was going to hit him. He did not write that Birch fell or that the injury was an accident because he was confused.

The medical resident who initially examined Birch at San Francisco General Hospital testified that although it is often difficult to assess whether emergency room patients are intoxicated because of the emotional condition induced by their injuries, Birch was alert and substantially well-oriented to understand what was happening and give an informed consent to surgery. Dr. Robert Hardy, who treated Birch, testified that she suffered a corneal laceration, an extensive rupture of her left eyeball. The laceration was closed in surgery lasting three hours. The eyeball was not removed but the vision loss was probably permanent. Hardy testified that a great deal of force would be required to produce this type of injury, the worst injury an eyeball can receive.

Jose Ferrer, a forensic pathologist, testified that the injury to Birch's eye could not have been caused by her falling into the cue stick because unless she fell from the ceiling the force would have been insufficient to cause the extensive injury. The injury was more consistent with having been caused by an upward thrusting of the pool cue.

DISCUSSION

A.*

. . . . . . . . . . . . . . . . . . . .

---

* See footnote, *ante,* page 694.

B.

*Honest But Unreasonable Belief in the Need to Defend*

In order to be convicted of mayhem, a defendant must be found to have acted "maliciously," that is, with "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act."[3] (Pen. Code, §§ 203, 7.) ▮ ▮ Appellant urges that an honest but unreasonable belief in the need to defend oneself negates the "malice" required for a mayhem conviction and that his conviction must be reversed because the trial court did not so instruct the jury sua sponte. The argument is based on *People* v. *Flannel* (1979) 25 Cal.3d 668, 679, 683 [160 Cal.Rptr. 84, 603 P.2d 1], which held that trial courts have a duty to instruct sua sponte that an honest but unreasonable belief in the need to defend against imminent peril to life or great bodily injury negates the element of malice aforethought required for a conviction of murder. ▮ In the absence of malice aforethought, an unlawful homicide is reduced from murder to manslaughter (see *People* v. *Flannel, supra,* 25 Cal.3d at p. 677, *People* v. *Conley* (1966) 64 Cal.2d 310, 318 [49 Cal.Rptr. 815, 411 P.2d 911]; Perkins & Boyce, Criminal Law (3d ed. 1982) pp. 82-84), the "catch-all" concept covering all homicides which are neither murder nor innocent. (*People* v. *Flannel, supra,* 25 Cal.3d at p. 679, Perkins & Boyce, *supra,* at p. 83; LaFave & Scott, Criminal Law (1982) p. 571.)

*Flannel* recognized that a mistaken but genuinely held belief in the need for self-defense is inconsistent with the state of mind required for murder. "[A] person who carefully weighs a course of action, and chooses to kill after considering reasons for and against, is normally capable of comprehending his societal duty to act within the law. 'If, *despite such awareness,* he does an act that is likely to cause serious injury or death to another, he exhibits that wanton disregard for human life or antisocial motivation that constitutes malice aforethought. (Italics added.)'[¶] . . . No matter how the mistaken assessment [of a need for self-defense] is made, an individual cannot genuinely perceive the need to repel imminent peril or bodily injury and simultaneously be aware that society expects conformity to a different standard. Where the awareness of society's disapproval begins, an honest belief ends. It is the honest belief of imminent peril that negates malice in a case of complete self-defense; the reasonableness of the belief simply goes to the justification for the killing." (*People* v. *Flannel, supra,* 25 Cal.3d at p. 679, quoting *People* v. *Conley, supra,* 64 Cal.2d 310, 322.) Accordingly, the

---

[3]The CALJIC instruction on mayhem informs the jury only that acting "maliciously" means acting "with an unlawful intent to vex, annoy, or injure another person." (CALJIC No. 9.30 (1979 rev.).)

honest but unreasonable belief does not excuse or justify, but serves to reduce the severity of the offense.

■ Mayhem, unlike murder, is a general intent crime. (*People* v. *Lopez* (1986) 176 Cal.App.3d 545, 549-550 [222 Cal.Rptr. 101]; *Goodman* v. *Superior Court* (1978) 84 Cal.App.3d 621, 624 [148 Cal.Rptr. 799]; *People* v. *Wright* (1892) 93 Cal. 564, 566 [29 P. 240].) No specific intent to maim or disfigure is required, the necessary intent being inferable from the types of injuries resulting from certain intentional acts; one who unlawfully strikes another without the specific intent to commit the crime of mayhem is still guilty of that crime if the blow results in the loss or disfigurement of a member of the body or putting out of the eye of the victim. (*Goodman* v. *Superior Court, supra,* 84 Cal.App.3d at p. 624; *People* v. *Nunes* (1920) 47 Cal.App. 346, 348 [190 P. 486].) ■ Nevertheless, the inclusion of the word "maliciously" in the definition of mayhem clearly requires proof of something more than that the act was done intentionally, wilfully or knowingly. (1 Witkin, Cal. Crimes (1963) § 60, pp. 64-65.) According to Perkins's widely accepted definition, "malice in the legal sense imports (1) the absence of all elements of justification, excuse or recognized mitigation, and (2) the presence of either (a) an actual intent to cause the particular harm which is produced or harm of the same general nature, or (b) the wanton and wilful doing of an act with awareness of a plain and strong likelihood that such harm may result." (Perkins & Boyce, Criminal Law, *supra,* p. 860; see also *People* v. *Coad* (1986) 181 Cal.App.3d 1094, at pp. 1114, 1117 [226 Cal.Rptr. 386] (conc. & dis. opn. of Kline, P. J.).)

Although the "malice" required for the offense of mayhem differs from the "malice aforethought" with which *Flannel* was concerned, it is equally true in both cases that the requisite state of mind is inconsistent with a genuine belief in the need for self-defense. ■ ■ ■ ■ ■ ■ One who truly believes there is a need for self-defense cannot be said to act with intent to "vex, injure or annoy"[4] and may be found guilty of no more than an assault or battery. Where there is evidence to support such a lesser included offense, the effect of instructing the jury that an honest but unreasonable belief negates malice has a similar effect in the context of

---

[4]There is a difference in the means of proof of the malice element of murder and mayhem. With murder, malice is presumed unless the prosecution's evidence establishes some basis of justification or excuse for the homicide; the defendant carries the burden of coming forward with evidence of justification, excuse or mitigation. (Perkins & Boyce, *supra,* at pp. 75-81; *People* v. *Coad, supra,* 181 Cal.App.3d at p. 1118, fn. 8, conc. & dis. opn. of Kline, P. J.; 4 Blackstone, Commentaries, p. 201.) With mayhem, malice must be proved by the prosecution. This difference, however, does not appear to affect the issue of unreasonable belief negating malice: in either case, the element of malice is not made out if the evidence shows an intent inconsistent with malice.

mayhem as in that of murder, reducing the severity of the offense without completely absolving the defendant of criminal responsibility.

In *People* v. *Wright, supra,* 93 Cal. at pp. 566-567, the court explained the requirements for proof of mayhem as follows: "[A] concurrence of act and intent, or criminal negligence, are the only elements essential to constitute a crime or public offense . . . . [T]he requirements of the statute in such cases will be fully met by proof of the commission of the act, from which the law will presume, though it be done in pursuance of an intent formed during the conflict, that it was done unlawfully and maliciously,—that is, 'with a wish to . . . injure another person, or an intent to do a wrongful act,'—*unless the evidence tends to show to the contrary,*—that is, that it was done in necessary self-defense, and under circumstances that were at the time unavoidable, in order to prevent the infliction or attempted infliction of some great bodily harm by the party injured." (Italics added.) Although *Wright* discusses only true self-defense as a complete defense to mayhem, the *Flannel* principle of mitigation due to an honest but unreasonable belief in the need for self-defense (sometimes referred to as "imperfect self-defense") is consistent with *Wright's* recognition that the intent required for a mayhem conviction may be negated by evidence of a contrary purpose.

 An unreasonable belief instruction should not be given where the evidence is such that the defendant is either guilty of mayhem or not guilty of a crime at all, or where a defendant makes a tactical decision to forego instructions on lesser included offenses and no lesser offense arising out of the same facts has been charged (as is here the case). In these situations, a *Flannel*-type instruction would serve to acquit the defendant rather than to mitigate the offense. The purpose of the *Flannel* instruction is to *mitigate* due to the absence of malice, not to absolve the defendant of criminal responsibility—*Flannel* did not take the step of *excusing* an offense due to an unreasonable belief in the need for self defense.[5] The duty to instruct sua

---

[5] As an analytical matter, it may be true that an honest but unreasonable belief in the need for self-defense negates malice and therefore should preclude conviction of mayhem whether or not the conduct, without malice, amounts to a criminal offense. The same might be said in the context of homicide, that the absence of malice aforethought should excuse rather than mitigate to manslaughter even when due to a belief reasonable people would not hold. (See *People* v. *Coad, supra,* 181 Cal.App.3d at p. 1124, Kline, P. J., conc. and dis.) As *Flannel* did not go this far, however, there is no basis for us to do so here. The *Flannel* instruction states a rule of mitigation and should be applied only where mitigation is appropriate.

The recent case of *People* v. *Smith* (1986) 187 Cal.App.3d 666 [231 Cal.Rptr. 897]] held that trial courts must instruct sua sponte "whenever the evidence suggests an honest belief, which if reasonable, would absolve the defendant of liability for the charged crime. Under such circumstances, an honest but *unreasonable* belief may negate the appropriate specific intent element." (*Id.,* at p. 679, fn. 8, italics in original.) While we agree that the unreasonable belief may negate malice, we disagree with *Smith* to the extent that it requires use of the unreasonable belief instruction where it would serve to acquit the defendant.

sponte on unreasonable belief thus goes hand in hand with the duty to instruct on lesser included offenses: if the evidence would justify a conviction of a lesser included offense, the court must instruct on that lesser offense (*People* v. *Wickersham, supra,* [(1982)] 32 Cal.3d. 307, 325 [185 Cal.Rptr. 436, 620 P.2d 311]) *and* on unreasonable belief; if the evidence would not support a conviction of a lesser offense or if defense counsel deliberately objects to lesser included offense instructions for tactical reasons (*id.,* at pp. 325, 332), neither instruction on the lesser nor on unreasonable belief are required. Additionally, the unreasonable belief instruction must be given if the defendant is charged in a separate count with a lesser included offense based on the same act as the mayhem charge, since the mayhem could in this case be "mitigated" by acquittal of the one count and conviction of the other.

Finally, the duty to instruct sua sponte on unreasonable belief arises only in circumstances appropriate for sua sponte instructions generally. As already indicated, the obligation to instruct on lesser included offenses arises only if the evidence would justify a conviction of such offenses or if the theory the defendant presents to the jury involves such lesser offenses. (*People* v. *Wickersham, supra,* 32 Cal.3d at p. 325.) ■ ■ "[U]nreasonable self-defense comes within *Sedeno's* category of 'defenses' for purposes of the obligation to instruct *sua sponte*" (*People* v. *Wickersham, supra,* 32 Cal.3d at p. 329); the obligation to instruct on defenses arises " 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*Id.,* at p. 326, quoting *People* v. *Sedeno, supra,* [(1974)] 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913], overruled on other grounds in *People* v. *Flannel, supra,* 25 Cal.3d at p. 684, fn. 12.)

In summary, a trial court should instruct sua sponte that an honest but unreasonable belief rule in the need for self-defense negates the malice required for a conviction of mayhem in cases where there is more than minimal and insubstantial evidence of self-defense; the defendant is relying upon such a defense or the defense is not inconsistent with the defendant's theory of the case; there is evidence to support a conviction of lesser included offenses; and the jury is instructed on such offenses.

■ Sua sponte instructions on unreasonable self-defense were called for in this case for the primary, though not the exclusive, reason that there is more than minimal and insubstantial evidence of self-defense. Presumably because of appellant's repeated statements that he thought his victim was going to hit him and that he took the action that he did in order "to protect myself," the trial judge seemed to harbor no doubt that there was sufficient

evidence of self-defense to warrant submission of the issue to the jury. The district attorney never raised any objection and herself requested instructions relative to the self-defense issue.[6] In all, the court gave eight instructions designed to assist the jury in evaluating appellant's claim of self-defense.[7] ■■■ Atrial judge's superior ability to evaluate the evidence renders it highly inappropriate for an appellate court to lightly question his determination to submit an issue to the jury. A reviewing court certainly cannot do so where, as here, the trial court's determination was agreeable to both the defense and the prosecution. ■■ The evidentiary consideration that led the trial court and counsel to agree on the need for instructions regarding self-defense lead with equal force to the need for instructions regarding unreasonable self-defense.

Unreasonable self-defense instructions were also appropriate in this case for the independent reason that appellant was relying on this theory, which was very explicitly put to the jury. The simplest way to illustrate this point, and also to show the necessity for a *Flannel* type instruction, is to quote from a critical portion of the district attorney's final summation to the jury: "[Appellant] is trying to cross between an accident and self defense[.] He says I raised up the pool cue and in self-defense because I was afraid of her, she came at me with a beer bottle, but he admits, even if you believe what he says, you would still find he committed a crime because she walked up to him with a beer bottle to her side. What is intimidating about a beer bottle to the side of a person[?] She walked up to me, she didn't say anything, she didn't raise it above her head, but I thought she was going to hit me with it so I raised the pool cue . . . . If you believe that he might have felt that he was in peril of danger, and that was a reasonable belief under the circumstances, then you look, if you believe that he thought he needed to act in self-defense, then you ask yourself, was that a reasonable belief, would a reasonable man in his position, and you use the reasonable man standard, would a reasonable person in his position have felt the need to protect themselves [*sic*] under that circumstance, if a woman walked up to a reasonable man with a beer to her side, would he feel it necessary to take a pool

---

[6] The district attorney requested the giving of CALJIC No. 5.55 ("The right of self-defense is not available to a person who seeks a quarrel with the intent to create a real or apparent necessity of exercising self-defense") and a modified version of CALJIC No. 9.07. The latter instruction, which in light of the verdict was perhaps the most germane, told the jury "that insulting words are not a justification for someone to assault another human being. In other words, even if she said everything he says she said, even this, if she called him a name, threw the pool ball over the table, those things are not enough to bring up the issue of self-defense. You have to take insulting words, I am sorry, if somebody calls you everything under the sun, or everything under the sky, you have to take that, you can't hit them for that. The law does not allow you to hit them unless they are coming at you with something and you feel your life is in danger, you have to take the insults, it doesn't justify self-defense."

[7] CALJIC Nos. 5.30, 5.31, 5.50, 5.51, 5.52, 5.54, 5.55 and 9.07.

cue and protect himself . . . . [T]hose are the questions you have to ask yourself, [it] is a reasonable man standard, the law of self defense, the right to self defense is not unlimited, it is limited by the law."

The foregoing statements, and others she made during closing argument, manifest the understanding of the district attorney that defendant was, in effect, claiming that whether or not it appeared reasonable to others he believed it was necessary to defend himself against being struck with a beer bottle. The district attorney's statements also reveal the emphasis she placed upon the objective reasonable man test. ■ However, the reasonable man standard, which applies to ordinary self-defense, and which was given to the jury in this case,[8] does *not* apply to imperfect or unreasonable self-defense. Pursuant to the rationale of *Flannel,* the jury must be told that a person who commits a criminal act in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury acts unlawfully, but does not harbor malice and therefore cannot be found guilty of an offense in which malice is a necessary element. The jury must also be told, to use the language of CALJIC No. 5.17, that *"This would be so even though a reasonable man in the same situation seeing and knowing the same facts would not have had the same belief."* (Italics added.)

■ Counsel's statement to the jury that appellant's claim of self-defense was wholly unavailing unless a reasonable person in the same position would have believed so was an erroneous statement of the law. The trial judge's failure to advise the jury that an honest but unreasonable belief in the need to defend oneself negates malice deprived appellant of an instruction essential to his theory of the case.

However, although the circumstances of the present case are such that the *Flannel*-type instruction would have been appropriate, the trial court in this case did not err in failing to give the instruction sua sponte. As stated in *Flannel,* a trial court's duty to give sua sponte instructions " 'involves percipience—not omniscience.' " (*People* v. *Flannel, supra,* 25 Cal.3d at p. 683, quoting *People* v. *Cram* (1970) 12 Cal.App.3d 37, 41 [90 Cal.Rptr. 393].) In *Flannel,* the court stated that given the undeveloped state of the unreasonable belief rule, the trial court in the case at hand could not be charged with the duty to "conceive and concoct an instruction embodying that rule," but

---

[8] Consistent with CALJIC 5.30, the jury was told: "It is lawful for any person who is being insulted to defend himself from an attack if, as a reasonable person, he has grounds for believing and does believe that bodily injury is about to be inflicted upon him. In doing so, he may use all reasonable force and means which he believes to be reasonably necessary, *and which would appear to a reasonable person in the same or similar circumstances to be necessary to prevent injury which appears to be imminent."* (Italics added.)

that the duty would apply in future cases. (*People* v. *Flannel, supra,* 25 Cal.3d at p. 683.) *Flannel* itself was concerned only with malice aforethought and the reduction of murder to manslaughter. The issue presented here is not so obviously analogous that the trial court should be held to a duty to apply the *Flannel* rule to a mayhem case. (See *People* v. *Smith, supra,* 187 Cal.App.3d 666, 679, fn. 8, decided after the trial herein [holding *Flannel* rule applicable, in future cases, "whenever the evidence suggests an honest belief, which if reasonable, would absolve the defendant of liability for the charged crime"].)

C., D.*

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

**SMITH, J.**—I concur in the judgment only.

■ The law is clear that the obligation of a trial court to instruct sua sponte with regard to defenses arises "only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913].)

The defendant testified on both direct and cross-examination that he did not strike or hit the victim. He repeatedly stated that the victim "fell into the pool stick." Further, the defendant at trial disclaimed prior statements to the effect that he had struck the victim. The defendant's testimony, and his attorney's argument, emphasized defendant's theory that the incident was accidental. Additionally, there was an absence of evidence that defendant held an honest but unreasonable belief in the need for self-defense. It would also appear that an act in self-defense, as an explanation of what took place, would be inconsistent with the defendant's "accidental" theory.

Therefore, the evidence presented and George McKelvy's defense do not create an obligation upon the trial court to instruct sua sponte on an

---

* See footnote, *ante,* page 694.

"honest but unreasonable belief in the need for self-defense." I therefore see no need for the discussion in the lead opinion regarding the sua sponte requirement to instruct with regard to this defense.

Rouse, J., concurred.