[No. F013315. Fifth Dist. Mar. 13, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
CARRELL WAYNE GOINS, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and II.

**COUNSEL**

Joan Isserlis, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, J. Robert Jibson, Robert C. Miller and Steve Y. Masuda, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BUCKLEY, J.—**

### STATEMENT OF THE CASE

Defendant was charged by information in the Kern County Superior Court with: (1) count I, a violation of Penal Code section 245, subdivision (a)(1) (assault with force likely to produce great bodily injury) and (2) count II, a violation of Penal Code section 653m, subdivision (a) (making a threatening telephone call). It was alleged that in the commission of the assault, the defendant, with the intent to inflict such injury, inflicted great bodily injury on the victim (Pen. Code, § 12022.7). It was further alleged the defendant had previously been convicted of a serious felony (Pen. Code, § 667).

The court granted the defendant's motion to bifurcate trial on the prior serious felony conviction.

At trial, defendant requested jury instructions on self-defense, which were given by the court.

The jury found defendant guilty of the assault and found the great bodily injury allegation to be true. The jury found defendant not guilty on count II.

The defendant waived his right to a jury trial on the prior serious felony allegation. The court found the prior serious felony conviction allegation to be true.

Defendant was sentenced to a total of twelve years in prison (four-year upper term on count I, three years for the great bodily injury enhancement and five years for the prior conviction enhancement).

On appeal, we are urged to find reversible error by the failure of the trial court, sua sponte, to give a *Flannel* (*People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1]) instruction as to the enhancement pleaded under Penal Code section 12022.7. We affirm.[1]

### STATEMENT OF FACTS

Gary Foster was in the concrete construction business in Kern County and occasionally arranged jobs for appellant. Appellant was married to

---

[1] In the unpublished portion of this opinion, we address the other contentions of appellant and find they are also without merit.

Gary Foster's cousin Cheryl Allen. Gary Foster, and his wife Virginia had on several occasions loaned appellant and his wife money.

Foster informed appellant he had arranged a job for him on August 7, 1989. When appellant asked Foster for a ride to the job site, Foster told appellant to contact Foster's son about transportation.

Appellant did not show up for work on August 7, 1989. He did call the Foster home several times. Appellant's first two phone calls were answered by Foster's daughter Cynthia. The first time appellant sounded calm and asked Cynthia to have her father return the call; the second time he sounded frustrated and angry. Foster's wife Virginia received the next phone call around noon. Appellant asked for Foster; there was nothing unusual about his voice. Unable to reach the phone for a later call, Virginia allowed the telephone answering machine to take the call. Appellant left a message which said, "This is Wayne. Have you got a God damned problem there? Why don't you answer the phone?" Appellant's voice sounded angry and he sounded like he may have been drunk.

After Foster arrived home from work, appellant arrived at the Foster home. Appellant and Foster went outside. Appellant asked Foster why he did not pick him up for work. Foster asked appellant whether he had contacted Foster's son Phillip. As Foster turned to pick up a receipt that had fallen from his pocket, appellant struck him across the back of the head. Although Foster was able to partially block the blow, it knocked him to the ground. Appellant, who was wearing sharp-toed cowboy boots, then kicked Foster in the ribs. Foster thought appellant was trying to kick him in the head, but because Foster rolled over, appellant was only able to "stomp" him on the legs. The blow to the ribs was "as hard as anyone could kick," but the blows to the legs were glancing blows. While appellant was assaulting Foster, he stated, "I could kill you, you motherfucker . . . . Get up, you little son of a bitch. You're a tough little son of a bitch."

Foster got to his feet, and appellant backed off. Virginia came out of the house and saw blood on Foster's left arm. She got between the two men and told appellant to get the "hell" out of there. She told her daughter Cynthia to call the police. Appellant began calling Virginia a "bitch," a "motherfucker," and threatening to come "get her" with a .357 magnum. Appellant stated words to the effect of, "Go ahead, call the sheriff. I'm not afraid of the sheriff. I'll be back. I'll get you."

While Virginia and appellant were shouting at each other, Foster retrieved and opened a knife he had in his pocket. The knife had a blade approximately two inches in length. Foster testified he intended to use the

knife to defend himself and his family if appellant attacked again. Cynthia testified she saw the knife; Virginia testified she did not see the knife.

Appellant walked across the street to a parked pickup truck and entered the passenger side. The pickup drove off. Foster attempted to note the license number but was unable to do so. Foster's daughter had called the sheriff's office, and a deputy arrived a few minutes later. The deputy who interviewed Foster, Deputy Rodriguiz, described him as distraught, frightened, and as having difficulty breathing. Foster appeared to be in great pain, and the family was hysterical.

Foster's sister and wife drove him to the hospital. Doctor Rutledge testified he found evidence of a rib fracture and a left lung was partially collapsed. To reexpand the lung, the doctor made an incision through the lining of the chest wall cavity and inserted a large catheter. The procedure is fairly painful since the lining of the chest wall cavity cannot be anesthetized. Rutledge testified it would take considerable force to break a rib in a healthy male, such as Foster. While in the hospital, Foster developed pneumonia and stayed for eight days.

Several days after leaving the hospital, Foster received a phone call from appellant. Appellant stated, "Let's stop this before it goes too far." When Foster responded that it had already gone too far, appellant threatened Foster, stating, "There is not enough police in Bakersfield to stop me" and again mentioned his .357 magnum.

Appellant later wrote a letter to Foster apologizing for what happened.

*The Defense Case*

The appellant did not testify. The defense called James Dill, who testified he gave appellant a ride to the Foster home on the day of the incident. Dill waited in his pickup truck while appellant went to the house. After a few minutes, appellant returned, got into the truck, and said, "Let's go." As Dill was preparing to pull away, he saw a male with a cordless phone in his hand apparently trying to read his license plate number. He also saw two "girls" yelling something at appellant. He took appellant home.

Foster testified that after his wife came outside, she said words to the effect of, "Don't hurt Wayne."

Foster did not tell Deputy Rodriguiz about pulling the knife. Foster told Rodriguiz he had an argument with appellant that day and that appellant appeared to be intoxicated.

DISCUSSION

I., II.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### III.   *Flannel has no application to an enhancement*

■   Appellant's argument is narrowly framed that a *Flannel* (*People* v. *Flannel, supra,* 25 Cal.3d 668) instruction must be given, sua sponte, as to an enhancement where there is evidence of self-defense and the defense is reliant upon that theory. No such instruction was requested by defense at trial.   ■   Appellant does not contend that the *Flannel* instruction should have been given as to the underlying and substantive offense of Penal Code section 245, subdivision (a)(1), nor could he. To justify an act of self-defense for such a charge, the defendant must have an honest *and reasonable* belief that bodily injury is about to be inflicted on him. (*People* v. *Wilson* (1976) 62 Cal.App.3d 370, 374 [132 Cal.Rptr. 813].)

■   Appellant relies upon the cases of *Flannel, supra,* 25 Cal.3d 668 and *People* v. *Smith* (1986) 187 Cal.App.3d 666 [231 Cal.Rptr. 897] as authority for his position. For reasons set forth herein, we reject the assertions of appellant as being illogical and decline to extend *Flannel* beyond its narrow parameters.

In *People* v. *Flannel, supra,* 25 Cal.3d 668, the Supreme Court held that a defendant's honest but unreasonable belief in the need to defend himself against imminent peril negated the mental state of malice aforethought required for murder (reducing the crime to manslaughter). The court reasoned that an honest belief in the need to defend against imminent peril is inconsistent with malice. "In short, the state has no legitimate interest in obtaining a conviction of murder when, by virtue of defendant's unreasonable belief, the jury entertains a reasonable doubt whether defendant harbored malice. Likewise, a defendant has no legitimate interest in complete exculpation when acting outside the range of reasonable behavior. [Citation.]" (*Id.* at p. 680.)

It is imperative to point out that in *Flannel,* the purpose of the instruction, had it been given, would have been to *mitigate* culpability due to lack of malice, not to absolve the defendant of criminal responsibility. (*People* v. *McKelvy* (1987) 194 Cal.App.3d 694, 703 [239 Cal.Rptr. 782].) In *McKelvy,*

---

*See footnote, *ante,* page 511.

the court held that an unreasonable belief instruction should not be given where the evidence is such that the defendant is either guilty (of mayhem) or not guilty of a crime at all. *McKelvy* declined to follow the case of *People v. Smith, supra,* 187 Cal.App.3d 666, which held that trial courts must instruct, sua sponte, whenever the evidence suggests an honest belief, which if reasonable, would *absolve* the defendant of *liability* for the charged crime. (*McKelvy, supra,* 194 Cal.App.3d at p. 703, fn. 5.)

In this case, as noted, we are not dealing with a charged substantive crime. (*People v. Hernandez* (1988) 46 Cal.3d 194 [249 Cal.Rptr. 850, 757 P.2d 1013].) The fact Penal Code section 12022.7[5] included an additional element, specific intent, did not imply that it defined a new crime. (*Id.* at pp. 207-208.) ■ An enhancement does not define a crime or offense but merely fixes an additional penalty to the selected base term. (*People v. Best* (1983) 143 Cal.App.3d 232, 236 [191 Cal.Rptr. 614].)

■ Under the facts in this case, if the jury had found that self-defense was applicable, it could properly have absolved the appellant of liability for the underlying crime of assault with force likely to produce great bodily injury. The jury did not find that self-defense was demonstrated by the facts presented. An instruction allowing the jury to exonerate the appellant from the finding of Penal Code section 12022.7 solely on the basis of an honest but unreasonable belief in the necessity of self-defense would have been incongruous. The jury was properly given CALJIC No. 17.20, which made reference to the requisite specific intent. Specific intent has been defined as an intent to do some further act or to achieve some additional consequence. (*People v. Hood* (1969) 1 Cal.3d 444, 457 [82 Cal.Rptr. 618, 462 P.2d 370].) The predicated instruction was simply not relevant to the enhancement alleged. One could have an honest but unreasonable belief in the necessity of self-defense and still have the specific intent to inflict great bodily injury. " 'Intention . . . is the attitude of mind in which the doer of an act adverts to a consequence of the act and desires it to follow.' " (Perkins & Boyce, Criminal Law (3d ed. 1982) ch. 7, § D, p. 834, quoting Markby, Elements of Law (4th ed. 1889) § 220.)

We conclude, therefore, that *Flannel* has no application to an enhancement alleged in an information. To hold otherwise would be to give prophy-

---

[5] Penal Code section 12022.7 provides in part, "Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted."

lactic effect to an egregious act committed with the requisite specific intent where the underlying substantive crime, containing the necessary mens rea, is not susceptible of the same analysis. That is illogical and legally unsound.

### DISPOSITION

The judgment is affirmed.

Ardaiz, Acting P. J., and Vartabedian, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 6, 1991.