[No. B135269. Second Dist., Div. Six. July 25, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
CHANGA DIA JONES, Defendant and Appellant.

**COUNSEL**

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Hye Y. Yang, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, P. J.**—Here we hold a violation of Vehicle Code section 2800.3, evasion of a peace officer causing death or serious bodily injury, cannot support a charge of felony murder.[1]

Changa Dia Jones appeals from a judgment after conviction of second degree murder (Pen. Code, §§ 187, 189), evading an officer causing death (§ 2800.3), and other offenses. Because the court misinstructed regarding the specific intent required for felony murder, we reverse on that count, but otherwise affirm.

### FACTS

Danny Mosley, a Montebello automobile detailer, hired Jones. The very morning he was hired, Jones left the business with a car without permission.

Mosley had no record of the license number of the missing car and looked for Jones in Long Beach. He found him and promised "Nothing's going to happen. We just want the car in one piece." Jones drove off telling Mosley he was going home. Mosley summoned police who took up the chase.

Jones attempted to elude the officers, reaching speeds in excess of 70 miles per hour. His driving endangered the lives and property of everyone along his course. Jones collided with a police van only to speed off again. Later, he failed to negotiate a left turn, jumped the curb, and hit a building. Once again he sped off, driving on a crowded sidewalk at speeds nearing 50 miles per hour. He nearly struck a number of pedestrians before killing Richard Nolbert, a man walking with a cane. Jones then rear-ended a parked van, setting off the air bags in the stolen car. He abandoned it and fled again on foot before his eventual arrest.

Defense medical experts said Jones was legally unconscious when he killed Nolbert due to an "akinetic blackout disorder." Jones testified that he had a history of seizures. After Jones hit the building, he "blanked out" prior to killing Norbert, and did not remember what happened.

The prosecution presented two theories of murder, second degree felony murder and implied malice murder. The jury was instructed that it need not agree on the theory of murder.

### DISCUSSION

The felony defined by section 2800.3 requires a misdemeanor violation of section 2800.1. Section 2800.1 provides, in relevant part: "(a) Any person

---

[1]All statutory references are to the Vehicle Code unless otherwise stated.

who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor . . . ." Section 2800.3 provides for felony punishment of the offense, "[w]henever willful flight or attempt to elude a pursuing peace officer in violation of Section 2800.1 proximately causes death or serious bodily injury . . . ."

The court properly instructed the jury on implied malice murder. Malice is implied "when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." (*People v. Dellinger* (1989) 49 Cal.3d 1212, 1215 [264 Cal.Rptr. 841, 783 P.2d 200].) In contrast, malice is express when the defendant manifests "a deliberate intention unlawfully to take away the life of a fellow creature. . . ." (Pen. Code, § 188.) A jury could readily infer Jones was guilty of murder with implied malice. The court however also instructed on the felony-murder rule.

The purpose of the felony-murder rule is to deter felons from killing negligently or accidentally. (*People v. Wilson* (1969) 1 Cal.3d 431, 440 [82 Cal.Rptr. 494, 462 P.2d 22].) Certain enumerated felonies will support a first degree felony murder (e.g., arson, rape, burglary, robbery, etc.). Other inherently dangerous felonies may provide a basis for second degree felony murder. (Pen. Code, § 189.) The felony-murder rule dispenses with the requirement of malice and replaces it with the specific intent to commit the underlying felony. (*People v. Coefield* (1951) 37 Cal.2d 865, 868-869 [236 P.2d 570].)

Courts have looked askance at the felony-murder rule. "We have repeatedly stated that felony murder is a 'highly artificial concept' which 'deserves no extension beyond its required application.'" (*People v. Dillon* (1983) 34 Cal.3d 441, 462- 463 [194 Cal.Rptr. 390, 668 P.2d 697], quoting *People v. Phillips* (1966) 64 Cal.2d 574, 582 [51 Cal.Rptr. 225, 414 P.2d 353]; accord, *People v. Henderson* (1977) 19 Cal.3d 86, 92-93 [137 Cal.Rptr. 1, 560 P.2d 1180].) "The felony-murder doctrine has been censured not only because it artificially imposes malice as to one crime because of defendant's commission of another but because it anachronistically resurrects from a bygone age a 'barbaric' concept that has been discarded in the place of its origin [England] . . . ." (*Phillips, supra,* at p. 583, fn. 6.)

A conviction under the felony-murder doctrine requires proof that the defendant acted with the specific intent to commit the underlying felony, even if the underlying felony does not itself require specific intent. (*People*

*v. Hart* (1999) 20 Cal.4th 546, 608 [85 Cal.Rptr.2d 132, 976 P.2d 683] [rape]; *People v. Hernandez* (1988) 47 Cal.3d 315, 346 [253 Cal.Rptr. 199, 763 P.2d 1289] [rape and sodomy]; *People v. Sears* (1965) 62 Cal.2d 737, 744 [44 Cal.Rptr. 330, 401 P.2d 938] [mayhem], overruled on other grounds in *People v. Cahill* (1993) 5 Cal.4th 478, 494, 509-510 [20 Cal.Rptr.2d 582, 853 P.2d 1037].)

The use of mayhem in the felony-murder context provides an analogy here.[2] Mayhem is a general intent crime. (*People v. Lopez* (1986) 176 Cal.App.3d 545, 549-550 [222 Cal.Rptr. 101].) No specific intent to maim or disfigure is required. Mayhem, like the offense here, is defined in part by the harm that results from the defendant's conduct whether or not the defendant intended that result. One who unlawfully strikes another without the specific intent to commit the crime of mayhem is still guilty of that crime if the blow results in the loss or disfigurement of a member of the body or putting out of the eye of the victim. (*Goodman v. Superior Court* (1978) 84 Cal.App.3d 621, 624 [148 Cal.Rptr. 799].)

But, the general intent to commit mayhem does not satisfy the felony-murder rule. (See *People v. Lopez, supra,* 176 Cal.App.3d 545.) The defendant must also specifically intend to inflict the required harm. (*Ibid.*; accord, *People v. Anderson* (1965) 63 Cal.2d 351, 358-359 [46 Cal.Rptr. 763, 406 P.2d 43].) "Under the felony murder doctrine, the intent required for a conviction of murder is imported from the specific intent to commit the concomitant felony. . . . [T]o presume an intent to maim from the act or type of injury inflicted, and then to transfer such 'presumed intent' to support a felony murder conviction is artificially to extend the fiction. We cannot compound such fictions. The doctrine of felony murder, therefore, must be limited to those cases in which an intent to commit the felony can be shown from the evidence." (*People v. Sears, supra,* 62 Cal.2d 737, 745.)

◼ Similarly, the intent just to evade police does not satisfy the felony-murder rule. The defendant must also specifically intend to cause a death or serious bodily injury, the harm required by section 2800.3. Jones's specific intent to elude the police cannot satisfy the felony-murder rule because it happened to result in death or serious bodily injury.

---

[2]Penal Code section 203 provides: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem."

There is no case law regarding the use of a violation of section 2800.3 as an underlying felony for felony murder.[3] Here, the flight from officers was a felony only because it caused the death of a pedestrian. Absent resulting death or serious bodily injury, there is no felony and the underlying offense is a misdemeanor. Accordingly, absent the specific intent to inflict the harm required to elevate the offense to a felony, Jones had no "independent felonious purpose" for application of the felony-murder doctrine. (*People v. Burton* (1971) 6 Cal.3d 375, 387 [99 Cal.Rptr. 1, 491 P.2d 793].)

But, a person who drives with the specific intent to commit a violation of section 2800.3, including the intent to kill or cause serious bodily injury while deliberately engaging in life-endangering conduct, acts with express or implied malice aforethought. (Pen. Code, § 188.) Because the purpose of the felony-murder rule is to deter negligent or accidental killings (see *People v. Satchell* (1971) 6 Cal.3d 28, 34 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383]), it does not apply where proof of actual malice is required. (*People v. Hansen* (1994) 9 Cal.4th 300, 314 [36 Cal.Rptr.2d 609, 885 P.2d 1022].)

If Jones were driving with the specific intent to violate section 2800.3, the homicide would be the product of actual malice (see *People v. Weisberg* (1968) 265 Cal.App.2d 476, 480-481 [71 Cal.Rptr. 157]) and resort to the felony-murder doctrine would be neither required nor permissible. With section 2800.3 as the underlying felony, there is no independent and collateral purpose separate from the intent to inflict the injury that causes the death. (See *People v. Taylor* (1970) 11 Cal.App.3d 57, 61, 63 [89 Cal.Rptr. 697].) A person driving with the specific intent to violate section 2800.3 is using the vehicle to commit an assault with a deadly weapon, an offense that precludes application of the felony-murder doctrine. (*People v. Landry* (1989) 212 Cal.App.3d 1428, 1437-1439 [261 Cal.Rptr. 254].)

The jury was not instructed that the mental state for a felony-murder conviction based upon the commission of section 2800.3 requires a finding the defendant had the specific intent to cause death or serious bodily injury. The jury was merely instructed that the defendant must have the specific intent to commit "evading the police, 2800.3 of the Vehicle Code" and that the killing could be "unintentional or accidental." This would allow a conviction for murder based upon his intent to commit a misdemeanor violation of section 2800.1.

---

[3]Although section 2800.2 appears to fit the facts of this case, it was not charged. A violation of section 2800.2 is an inherently dangerous violent felony because it requires the vehicle be "driven in a willful and wanton disregard for the safety of persons or property," an element not present in section 2800.3. (See *People v. Sewell* (2000) 80 Cal.App.4th 690, 693 [95 Cal.Rptr.2d 600].)

■ "As the moving party in a criminal action, it is the People's obligation . . . to tender adequate instructions . . . so that a lawful determination can be made and sustained on appeal." (*People v. Winslow* (1995) 40 Cal.App.4th 680, 683 [46 Cal.Rptr.2d 901].) That did not occur here.

The prosecutor further misled the jury. In argument, the prosecutor stated the killing could be "accidental" or "unintentional." She contended that Jones had to have the specific intent of "evading the police officer. . . . If you believe he did this, and that as a result of the defendant evading the police officer Richard Nolbert was killed, its got to be second degree . . . ." The prosecutor further argued, "With this one. Second-degree felony murder, there has to be no mental state. I don't have to prove anything other than the fact that he was attempting and had the specific intent to evade the police. No mental state, second degree." These arguments misstated the specific intent which would be required for second degree felony murder based upon a violation of section 2800.3.

Belated objections by the defense were overruled without discussion of their grounds or merits. In light of the effect upon Jones's substantial rights, we review the instructions even if his objections were inadequate. (Pen. Code, § 1259.)

Having determined there was error, we must assess whether it was prejudicial. The jury was provided with two theories of murder, implied malice and felony murder. The felony-murder instructions allowed a conviction without the mental state required for murder.

■ The harmless error rule of *Chapman v. California* (1967) 386 U.S. 18, 36 [87 S.Ct. 824, 833, 17 L.Ed.2d 705, 24 A.L.R.3d 1065] applies to a jury instruction that omits an element of an offense. (*Neder v. United States* (1999) 527 U.S. 1, 18 [119 S.Ct. 1827, 1838, 144 L.Ed.2d 35]; *People v. Flood* (1998) 18 Cal.4th 470, 504 [76 Cal.Rptr.2d 180, 957 P.2d 869].) Specifically, "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" (*Neder, supra,* at p. 18 [119 S.Ct. at p. 1838].)

Error is harmless "where an omitted element is supported by uncontroverted evidence," as "where a defendant did not, and apparently could not, bring forth facts contesting the omitted element . . . ." (*Neder v. United States, supra,* 527 U.S. at pp. 18-19 [119 S.Ct. at p. 1838].) Stated differently: "[A] court . . . asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. If the answer to that question is 'no,' holding the error harmless does not

'reflec[t] a denigration of the constitutional rights involved.' [Citation.]" (*Id.* at p. 19 [119 S.Ct. at p. 1839].)

 Here, a rational jury could conclude that Jones drove with the intent to evade police but did not intend to kill or inflict serious bodily injury. In summation, the prosecutor told the jury the intent to cause death or injury was not required, but the crime would still be murder. The defense presented expert testimony regarding the defendant's medical history and head injuries at the time of the death. The jury was told that the intent to flee, the intent necessary to commit the misdemeanor, was all that was required.

The misinstruction and misleading argument on the felony-murder theory constituted prejudicial error requiring reversal of Jones's conviction of second degree murder. It cannot be determined whether the jury reached its verdict based upon the appropriate theory of implied malice or the flawed theory of felony murder. (*People v. Smith* (1984) 35 Cal.3d 798, 808 [201 Cal.Rptr. 311, 678 P.2d 886].) On this record, we cannot say the error was harmless beyond a reasonable doubt.

The verdicts of guilt on counts 2, 3, and 4 for violations of sections 2800.3 and 2001, subdivision (a), and Penal Code section 487, subdivision (d) are unaffected by the appeal. Prison terms were stayed on those counts pursuant to Penal Code section 654, because "they either merge with Count 5 (Veh. Code, § 10851, subd. (a)) or Count 1 (second degree murder)." As a three strikes offender, Jones was sentenced to 25 years to life on count 5. An additional year was imposed for a prior prison term enhancement.

The judgment is reversed on count 1, second degree murder, but otherwise affirmed. The matter is remanded for further proceedings consistent with this opinion.

Yegan, J., and Coffee, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 15, 2000. Baxter, J., and Brown, J., were of the opinion that the petition should be granted.