93 Cal.Rptr.2d 871 (2000)
79 Cal.App.4th 224
The PEOPLE, Plaintiff and Respondent,
v.
Doeur Michael SON, Defendant and Appellant.
No. D032612.
Court of Appeal, Fourth District, Division One.
March 21, 2000.
Review Denied June 28, 2000.
*872 George L. Schraer, under appointment by the Court of Appeal, San Diego, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Raquel M. Gonzalez and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.
KREMER, P.J.
Doeur Michael Son appeals his jury-tried convictions of two murders while armed with a firearm. (Pen.Code,[1] §§ 187, subd. (a), 190.2, subd. (a)(3), 12022, subd. (a)(1).) Son contends the court erred in not instructing the jury on the lesser included offense of voluntary manslaughter under the theory he acted with "imperfect duress." Son also contends the court erred in excluding his proffered expert testimony about false confessions. We affirm the judgment.

I

INTRODUCTION
Son helped his accomplice shoot and kill two people. Son admitted his involvement in the killings to his girlfriend's brother. Later, Son told police he had participated in the homicides but had done so only because his accomplice threatened to kill him if he did not help.
At trial, Son denied participating in the killings and asserted an alibi defense. Son testified he made a false confession because police assertedly promised he would be incarcerated for only one year. When Son proffered expert testimony on false confessions, the court excluded such proffered testimony as irrelevant and as unnecessary in light of Son's testimony he had confessed falsely because of the police offer of leniency. The court also rejected Son's request for a jury instruction on the lesser included offense of voluntary manslaughter under his theory of "imperfect duress," to wit, that he participated in the killings in the honest but unreasonable belief his life would otherwise be endangered. *873 The jury convicted Son of one first degree murder and one second degree murder.

II

FACTS

A

The Killings
Son and Mon Smann were friends and fellow members of the Crazy Oriental Crips gang.
On the night of February 1, 1992, Son and Smann invited Chang Lee and Sisouphanh Kamphila (Nick) to go out with them purportedly to pick up females. After Son and Smann got into the back seat of Lee's black Toyota Supra, Smann directed Lee and Nick to Skyline Drive in San Diego to pick up the girls.
Eventually, Smann told Lee and Nick to pull over beside Morse High School. However, no girls were there. Instead, Smann took out a Titan semi-automatic .25 caliber handgun and made Lee lie face down on the school lawn. Smann shot Lee four times.[2] Lee was also strangled before he died. Son then took Nick from the car and held Nick on the ground while Smann shot Nick four times.[3] The killings were retaliatory in that Smann believed that Lee and Nick had robbed Smann's house on the previous Halloween.

B

Son's Girlfriend's Brother Learns Details of Killings and Tells Police
After the killings, Smann returned to Cambodia and escaped arrest. However, Son made inculpatory statements about the killings to Soeun Ricky Sim (Ricky), the brother of Son's girlfriend Kim Sim (Kim). Ricky had also overheard some of the details of the killings when Smann was talking to Son about fleeing because police were looking for him. In October 1995 and December 1996, Ricky gave Detective Gallivan statements detailing Son's admissions about his participation in the killings.[4] Police also found Son's fingerprint on Lee's car.

C

Son's Post-Arrest Inculpatory Statements to Police
On October 9, 1997, at 5:45 a.m., Detective Gallivan arrested Son. Half an hour later, Gallivan began a four-hour interview with Son. Son denied having been present when the killings occurred. At 12:27 p.m., after Gallivan told Son's girlfriend Kim he believed Son was involved in the killings, Kim was taken into the interview room. Kim told Son she had told district attorney Investigator Marquez some things about the killings. After speaking to Son, Kim was taken home by Gallivan and Marquez. Gallivan told Kim to contact him if Son contacted her and said he wanted to talk to police.
A few hours later at 4:20 p.m., Kim paged Detective Gallivan and said she had Son on the line, Son admitted being present when Lee and Nick were killed, and Son wanted to talk to Gallivan. Gallivan taped his three-way conversation with Son and Kim. During that three-way conversation, Gallivan told Son there were no guarantees about what would happen if Son talked. Gallivan also asked Son to tell him what happened. Son stated: Smann killed the two victims because they had robbed Smann's house; Smann telephoned the two *874 victims and invited them to go out with Son and Smann to pick up some girls; when the victims arrived in a black Toyota Supra, Son and Smann got into the car; Smann directed Lee and Nick to Skyline Drive to pick up the girls and told them to pull over by Morse High School; both victims were shot outside the car; Son held one of the victims while Smann shot such victim; Son held the victim because Smann told him to do so; Son feared Smann would also shoot Son if Son let the victim go instead of holding him; and when Son and Smann had first entered the Toyota, Smann showed his gun to Son causing Son to believe that Smann was going to carry out his prior plan to kill Lee and Nick for having robbed Smann's house.
After the three-way phone conversation, Detective Gallivan went to the jail and interviewed Son further. The interview was tape recorded. During the interview Son stated: Smann told Son that Lee and Nick robbed Smann's house on Halloween when Smann was not home but Smann's parents were; either on that day or a week after the robbery, Smann told Son that Smann wanted to kill Lee and Nick because they had robbed Smann's house; Smann telephoned Nick and talked about picking up some girls; when Lee and Nick arrived, Son and Smann got into the back-seat of the Toyota where Smann showed his .25 caliber handgun to Son; Smann told driver Lee to stop at Morse High School and then pulled the gun from his (Smann's) waistband; Smann took a rope out of his pocket and put it around Lee's neck; however, because Smann was unable to kill Lee with the rope, Smann shot Lee; meanwhile, Son and Nick stayed in the car; Smann told Son that if Nick escaped, Smann would shoot Son; and after Smann finished killing Lee, Smann had Son take Nick from the car and hold Nick while Smann shot Nick. Son also told Gallivan that Son had brought the rope and put it around the neck of one of the victims.

III

SUPERIOR COURT PROCEEDINGS
In December 1997 by information, the People charged Son with two counts of murder while armed with a handgun. (§§ 187, subd. (a), 12022 subd. (a)(1).) The information also alleged Son committed multiple murders within the meaning of section 190.2, subdivision (a)(3).
In October 1998 the matter came on for jury trial. Ricky testified he had given Detective Gallivan extensive statements about Son's admitting his involvement in the killings, but Ricky claimed his statements had been a lie since Ricky was mad at Son for impregnating Ricky's 13-year-old sister Kim and for cheating on Kim by also seeing other girls. However, Ricky was unable to explain why the details of the killings he gave Gallivan closely matched the physical evidence and Son's later post-arrest admissions. The People introduced into evidence Son's taped interviews with police and the transcripts of those interviews.
Asserting an alibi defense, Son testified he was with his girlfriend Tina when the killings occurred. In that vein, Son asserted he was sure he had gone to see a movie and cruise around Mission Beach with Tina on the night of the killings. However, on cross-examination Son testified he did not know Tina's last name or where she could be found and had never told police or anyone else about Tina. Further, although initially testifying the movie started at 5 or 5:30 p.m., Son later testified he could not remember if Smann and the two victims had left the front of his apartment about 6 or 7 p.m., testimony indicating that Son had not left for the movies by that time.
Additionally, Son testified that he made the inculpatory taped statements to Detective Gallivan because Gallivan promised Son and Kim that Son would serve only one year in county jail if Son admitted his involvement in the killings. Son also testified he knew certain details about the killings because Gallivan had shown him photos *875 of the victims. However, Son later acknowledged he gave specific details about the killings during his three-way conversation with Gallivan and Kim, a conversation that occurred an hour before Son was taken to jail where, according to Son, Gallivan showed him the photos of the killings and told Son details.[5]
In rebuttal, Detective Gallivan and Investigator Marquez testified they had not promised Son or Kim that Son would serve only one year in county jail if he admitted participating in the killings. Marquez also testified that although Son said he had been in Texas at the time of the killings, Marquez's investigation revealed Son was not in Texas at that time.
The jury convicted Son of the first degree murder of Nick and the second degree murder of Lee. The jury also found true the handgun allegations and the multiple-murder special-circumstance allegation. Son appeals.

IV

DISCUSSION

A

Court's Failure to Instruct on Voluntary Manslaughter Based on Imperfect Duress
As noted, there was evidence at trial indicating Son believed he had to assist Smann in the killings or his own life would otherwise have been endangered. Accordingly, asserting such beliefeven if unreasonablenegated the material element of malice aforethought for murder, Son asked the court to instruct the jury on voluntarily manslaughter as a lesser included offense of murder based upon the theory of imperfect duress. Son contends the trial court reversibly erred in declining to give such instruction. However, we find no instructional error.
"`Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) A defendant who commits an intentional and unlawful killing but who lacks malice is guilty of ... voluntary manslaughter. (§ 192.)' [Citation.] Generally, the intent to unlawfully kill constitutes malice. [Citations.] `But a defendant who intentionally and unlawfully kills lacks malice ... in limited, explicitly defined circumstances: either when the defendant acts in a "sudden quarrel or heat of passion" (§ 192, subd. (a)), or when the defendant kills in "unreasonable self-defense" the unreasonable but good faith belief in having to act in self-defense [citations].' [Citation.] Because heat of passion and unreasonable self-defense reduce an intentional, unlawful killing from murder to voluntary manslaughter by negating the element of malice that otherwise inheres in such a homicide [citation], voluntary manslaughter of these two forms is considered a lesser necessarily included offense of intentional murder [citation]." (People v. Breverman (1998) 19 Cal.4th 142, 153-154, 77 Cal.Rptr.2d 870, 960 P.2d 1094, italics in original; People v. Barton (1995) 12 Cal.4th 186, 199, 47 Cal.Rptr.2d 569, 906 P.2d 531; see also People v. Ochoa (1998) 19 Cal.4th 353, 422, 79 Cal.Rptr.2d 408, 966 P.2d 442;[6]People v. Coad (1986) 181 Cal.App.3d 1094, 1106, 226 Cal.Rptr. 386.[7])

*876 1

Case Law Does Not Support Use of Imperfect Duress to Mitigate Murder to Voluntary Manslaughter By Negating Malice
"In a criminal trial, it is ordinarily the trial court's duty to instruct the jury not only on the crime with which the defendant is charged, but also on any lesser offense that is both included in the offense charged and shown by the evidence to have been committed." (People v. Barton, supra, 12 Cal.4th at p. 190, 47 Cal.Rptr.2d 569, 906 P.2d 531.) In that vein, Son contends an instruction was required on the lesser included offense of voluntary manslaughter on the theory of "imperfect" duress since the record contained evidence Son helped Smann kill the victims only because Son feared Smann would kill him if he did not help. In response, the People contend that since under subdivision Six of section 26 the defense of "perfect" duress would not have been available to Son because the charged crimes were punishable by death, the concept of "imperfect" was similarly unavailable to Son.
Section 26 provides in relevant part: "All persons are capable of committing crimes except those belonging to the following classes: ... [¶] SixPersons (unless the crime be punishable with death) who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused."[8] Son acknowledges that such complete defense of "perfect" duress would not have been available here because he was charged with crimes punishable by death. (§ 26, subd. Six; People v. Petro (1936) 13 Cal.App.2d 245, 248, 56 P.2d 984;[9] see also People v. Pena (1983) 197 Cal.Rptr. 264, 149 Cal.App.3d Supp. 14, 22.[10]) Son also acknowledges such defense of perfect duress is not available where, as here, a defendant has allegedly committed murder with a special circumstance. (People v. Beardslee (1991) 53 Cal.3d 68, 85, 279 Cal. Rptr. 276, 806 P.2d 1311.) Further, Son acknowledges that no published case has analyzed in detail the doctrine of "imperfect" duress and its relationship to malice. However, citing People v. King (1991) 1 Cal.App.4th 288, 296-299 and footnote 12, 2 Cal.Rptr.2d 197; People v. Anderson *877 (1991) 233 Cal.App.3d 1646, 1665-1666, 285 Cal.Rptr. 523; People v. Jacobs (1991) 230 Cal.App.3d 1337, 1343-1345, 281 Cal.Rptr. 733; People v. McKelvy (1987) 194 Cal. App.3d 694, 703, footnote 5, 239 Cal.Rptr. 782; and People v. Smith (1986) 187 Cal. App.3d 666, 677-679, 231 Cal.Rptr. 897, Son contends case law suggests the doctrine of "imperfect" duress exists to reduce murder to voluntary manslaughter by negating malice and should be recognized as analogous to the doctrine of "imperfect" or "unreasonable" self-defense discussed in People v. Bacigalupo (1991) 1 Cal.4th 103, 2 Cal.Rptr.2d 335, 820 P.2d 559; People v. Breverman, supra, 19 Cal.4th 142, 77 Cal. Rptr.2d 870, 960 P.2d 1094; People v. Barton, supra, 12 Cal.4th 186, 47 Cal.Rptr.2d 569, 906 P.2d 531; and People v. Flannel (1979) 25 Cal.3d 668, 160 Cal.Rptr. 84, 603 P.2d 1 (Flannel), disapproved on another point in In re Christian S. (1994) 7 Cal.4th 768, 777, 30 Cal.Rptr.2d 33, 872 P.2d 574.[11] On this record, we conclude the doctrine of "imperfect" duress was not available to Son.
Although the People did not seek the death penalty here, Son was charged with crimes punishable with death, to wit, two first degree murders (§ 187). Son was also charged with the special circumstance of multiple murders (§ 190.2, subd. (a)(3)). In such cases, the Legislature has for policy reasons statutorily barred the use of "perfect" duress as a potential "defense." (§ 26, subd. Six; People v. Petro, supra, 13 Cal.App.2d at p. 248, 56 P.2d 984; People v. Pena, supra, 197 Cal.Rptr. 264, 149 Cal.App.3d Supp. at p. 22.) Specifically, although recognizing honest and reasonable duress as a complete defense to some crimes, the Legislature has determined that such "perfect" duress does not warrant absolving a defendant from culpability for murder. For those same policy reasons, honest but unreasonable duress ("imperfect" duress) does not negate malice for purposes of reducing a defendant's culpability from murder to voluntary manslaughter. (Cf. People v. Anderson, supra, 233 Cal.App.3d at p. 1664, 285 Cal.Rptr. 523 [referring to the "obvious differences between self-defense and duress"].) In People v. Anderson, supra, the appellate court observed: *878 "Apparently no court has ever actually held in a published decision that the defense of `imperfect duress' in fact exists under California law, even though this nebulous concept finds some indirect support in dicta or by forced analogy to the holdings of other cases. Further, contrary authority ... weighs strongly against the recognition of such a defense in these circumstances. [Citations.]" (Id, at p. 1663, 285 Cal.Rptr. 523.) [12] Similarly, we find no authority actually holding that the doctrine of "imperfect" duress exists under California law so as to mitigate a murder charge to voluntary manslaughter by negating malice. Moreover, we decline to recognize such doctrine.
Nothing in case law relied upon by Son warrants a contrary result. In People v. King, supra, 1 Cal.App.4th 288, 2 Cal. Rptr.2d 197, the appellate court rejected the defendants' contention that the trial court erred in not instructing the jury sua sponte that an honest but unreasonable belief as to duress could negate the specific intent necessary for robbery and felony murder based on robbery. (Id at p. 297, 2 Cal.Rptr.2d 197.) In a footnote relied upon by Son, the appellate court simply noted: "Without citation to authority or argument, defendant briefly states that an honest but unreasonable belief in duress would negate the premeditation and deliberation necessary to support the prosecution's alternative murder theory. Failure to argue the matter and to cite to authority is deemed a waiver of the point. [Citation.] In his reply brief, defendant for the first time contends incorrect language was used by the court in instructing the jury that an honest but unreasonable belief in duress would negate malice. Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief. [Citation.] In any event, where, as here, it appears beyond a reasonable doubt that the jury based its verdicts on a theory of felony murder supported by competent evidence, it is unnecessary to address these issues.... Since the jury was correctly instructed under the felony-murder doctrine, any error in instructions concerning premeditated and deliberate murder could not possibly have affected the jury's verdict so as to result in a miscarriage of justice." (Id, at p. 297, fn. 12, 2 Cal. Rptr.2d 197.)
In People v. Anderson, supra, 233 Cal. App.3d 1646, 285 Cal.Rptr. 523, relied upon by Son, the appellate court discussed People v. Smith, supra, 187 Cal.App.3d 666, 231 Cal.Rptr. 897, a case also relied upon by Son.[13] Specifically, in People v. *879 Anderson, supra, the appellate court stated: "Flannel was misapplied by analogy in certain dicta contained in People v. Smith (1986) 187 Cal.App.3d 666, 231 Cal.Rptr. 897. Smith correctly affirmed a conviction by holding there was no duty to instruct sua sponte on the theretofore unrecognized defense of `imperfect duress' under the facts there presented; but in dicta, it distorted Flannel's logic to the extent of appearing to recognize the concept of `imperfect duress' as a complete defense negating wrongful intentdespite the obvious differences between self-defense and duress; and despite the even more critical distinction between a factor in mitigation which negates malice, thereby resulting in a conviction of a lesser crime, and a complete defense negating intent which would result in acquittal." (People v. Anderson, supra, at pp. 1663-1664, 285 Cal.Rptr. 523, italics added.) However, in People v. Anderson, supra, the appellate court did not recognize the doctrine of imperfect defense for purposes of reducing a murder charge to voluntary manslaughter by negating malice. Instead, as discussed, the appellate court simply stated: "Even if imperfect duress might otherwise mitigate a crime from murder to manslaughter, appellants were charged with murder here only under the felony-murder rule[,]" a rule under which, "by definition, a manslaughter or any other killing perpetrated in the commission of a felony is first degree felony murder." (Id. at p. 1665, 285 Cal.Rptr. 523, italics added.) In the same vein, the appellate court stated: "Even if the defense of imperfect duress could negate malice aforethought, malice aforethought is not an element of either felony murder or robbery. Hence, a defense tending to negate malice aforethought is simply irrelevant and provides no defense at all to felony murder." (Id. at p. 1666, 285 Cal.Rptr. 523, italics added.)[14]
In People v. Jacobs, supra, 230 Cal. App.3d 1337, 281 Cal.Rptr. 733 (Jacobs), relied upon by Son, the appellate court discussed People v. Smith, supra, 187 Cal. App.3d 666, 231 Cal.Rptr. 897, and another case relied upon by Son, to wit, People v. McKelvy, supra, 194 Cal.App.3d 694, 239 Cal.Rptr. 782 (McKelvy ).[15] Specifically, in Jacobs, the appellate court stated that in *880 McKelvy "the First Appellate District found that the purpose of the Flannel instruction is to mitigate, rather than to absolve the defendant of criminal responsibility. ([McKelvy, supra,] at p. 703, 239 Cal.Rptr. 782.)" (Jacobs, supra, 230 Cal.App.3d at p. 1345, 281 Cal.Rptr. 733.) The First District expressly disagreed with the conclusion of the Fourth District in Smith, which approved of the negation of specific intent by an honest but unreasonable belief. The First District stated: "`While we agree that the unreasonable belief may negate malice, we disagree with Smith to the extent that it requires use of the unreasonable belief instruction where it would serve to acquit the defendant.' ([McKelvy, supra,] at p. 703, fn. 5, 239 Cal.Rptr. 782.) No other reported case has followed Smith in holding that specific intent may be negated by an honest but unreasonable belief." (Jacobs, supra, at p. 1345, 281 Cal.Rptr. 733, italics in original.) However, although in its footnote 5relied upon by Son and cited in Jacobsthe appellate court in McKelvy indicated that an honest but unreasonable belief may negate malice, McKelvy did not involve duress or homicide but instead featured self-defense and mayhem, a general intent crime that included the word "maliciously" in its definition. (McKelvy, supra, at p. 702, 239 Cal.Rptr. 782.) As observed by the appellate court in McKelvy, "[although the 'malice' required for the offense of mayhem differs from the `malice aforethought' with which Flannel was concerned, it is equally true in both cases that the requisite state of mind is inconsistent with a genuine belief in the need for self-defense." (McKelvy, supra, at p. 702, 239 Cal.Rptr. 782.) Hence, the appellate court in McKelvy concluded that "a trial court should instruct sua sponte that an honest but unreasonable belief ... in the need for self-defense negates the malice required for a conviction of mayhem in cases where there is more than minimal and insubstantial evidence of self-defense...." (Id. at p. 704, 239 Cal.Rptr. 782, italics added.) In context, the comment in footnote 5 of McKelvy about an unreasonable belief negating malice may thus not be reasonably interpreted as recognizing the operation of the doctrine of "imperfect" duress in a homicide case to mitigate murder to voluntary manslaughter by negating malice and, in any event, is at most dictum.
Finally, the portions of People v. Smith, supra, 187 Cal.App.3d 666, 231 Cal.Rptr. 897, relied upon by Son have been disapproved by the Supreme Court. Specifically, in People v. Bacigalupo, supra, 1 Cal.4th 103, 2 Cal.Rptr.2d 335, 820 P.2d 559, the Supreme Court stated: "Defendant cites People v. Smith (1986) 187 Cal. App.3d 666, 679, 231 Cal.Rptr. 897, ... as authority that duress can provide an imperfect defense to robbery and that the trial court had an obligation to instruct the jury on that theory, without request. Smith concluded without analysis that an honest but unreasonable belief that the defendant acted under duress might negate the specific intent necessary for robbery. [Citation.] We disapprove Smith on this point." (People v. Bacigalupo, supra, at p. 126, fn. 4, 2 Cal.Rptr.2d 335, 820 P.2d 559.)[16]
*881 In sum, nothing in California case law has recognized the doctrine of imperfect duress for purposes of reducing murder to voluntary manslaughter by negating malice and we also decline to do so.

2

Imperfect Duress Does Not Negate Specific Intent to Aid and Abet Murder
Moreover, we also determine that Son's asserted imperfect duress did not operate to negate the element of specific intent necessary for his murder convictions to the extent Son's culpability was based on his having aided and abetted Smann in the homicides. As discussed, California law has rejected application of the doctrine of imperfect duress to negate a crime's element of specific intent. (People v. Bacigalupo, supra, 1 Cal.4th at p. 126, fn. 4, 2 Cal.Rptr.2d 335, 820 P.2d 559; see also People v. Kearns, supra, 55 Cal. App.4th at pp. 1135-1137, 64 Cal.Rptr.2d 654; People v. King, supra, 1 Cal.App.4th at pp. 298-299, 2 Cal.Rptr.2d 197; People v. Jacobs, supra, 230 Cal.App.3d at p. 1345, 281 Cal.Rptr. 733.) For example, in People v. King, supra, the appellate court stated: "Flannel's holding that an honest but unreasonable belief in the need to defend can negate malice is inapplicable to specific intent. Flannel held there was inherent incompatibility between malice as it defined that term and the honest belief in the need to defend oneselfi.e., that one `cannot genuinely perceive the need to repel imminent peril or bodily injury and simultaneously be aware that society expects conformity to a different standard.' [Citation.] Here, there is no such incompatibility. [11] One who acts under an honest but unreasonable belief in duress faces an agonizing choice: the defendant simultaneously genuinely perceives the need to defend himself and understands that he can negate the threat to himself only by performing a specific unlawful act against an innocent third party. To protect himself, the defendant must both specifically intend to perform the unlawful act and act on that specific intent. There is no inconsistency here but a concurrence of act and intent. The existence of intent is not negated by the legal fiction of transferring it to the aggressor. Even in the context of self-defense, it has been recognized that `[o]ne could have an honest but unreasonable belief in the necessity of self-defense and still have the specific intent to inflict great bodily injury.'" (People v. King, supra, at pp. 298-299, 2 Cal.Rptr.2d 197, italics added, fn. omitted.)
Further, in People v. Bacigalupo, supra, 1 Cal.4th 103, 2 Cal.Rptr.2d 335, 820 P.2d 559, the Supreme Court specifically rejected the defendant's contention that "an honest but unreasonable belief in duress would negate the specific intent element of robbery." (Id. at p. 126, 2 Cal.Rptr.2d 335, 820 P.2d 559.) The court stated: "In the case of robbery, ... the unreasonable belief that a defendant is acting under duress will not negate the requisite specific intent; that intent is to deprive the owner of the property taken. [Citation.] Here, even if defendant took the jewelry from [the] jewelry store under the unreasonable belief that doing so was necessary to protect lifehis own or that of a family memberthat unreasonable belief alone would have no effect on his intent to deprive the rightful owner permanently of the jewelry." (Ibid.) The Supreme Court also expressly disapproved the conclusion in People v. Smith, supra, 187 Cal.App.3d 666, 231 Cal.Rptr. 897, that "an honest but unreasonable belief that the defendant acted *882 under duress might negate the specific intent necessary for robbery." (People v. Bacigalupo, supra, at p. 126, fn. 4, 2 Cal. Rptr.2d 335, 820 P.2d 559; see also People v. King, supra, 1 Cal.App.4th at pp. 298-299, 2 Cal.Rptr.2d 197.) Finally, citing People v. Bacigalupo, supra, we stated in People v. Kearns, supra, 55 Cal.App.4th 1128, 64 Cal.Rptr.2d 654: "The California Supreme Court has held that `[i]n the case of robbery, ... the unreasonable belief that a defendant is acting under duress will not negate the requisite specific intent ... to deprive the owner of the property taken.'" (Id, at p. 1137, 64 Cal.Rptr.2d 654.)
In People v. Mendoza (1998) 18 Cal.4th 1114, 77 Cal.Rptr.2d 428, 959 P.2d 735, the Supreme Court concluded that "the intent requirement for aiding and abetting liability is a `required specific intent' for which evidence of voluntary intoxication is admissible under section 22." (Id. at p. 1131, 77 Cal.Rptr.2d 428, 959 P.2d 735.) In reaching that conclusion, the Supreme Court observed: "`Specific and general intent have been notoriously difficult terms to define and apply....' [Citation.] `When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.'" (Id. at p. 1127, 77 Cal.Rptr.2d 428, 959 P.2d 735, citing People v. Hood (1969) 1 Cal.3d 444, 82 Cal. Rptr. 618, 462 P.2d 370.) Hence, the Supreme Court reasoned: "The intent requirement for an aider and abettor fits within the Hood definition of specific intent. To be culpable, an aider and abettor must intend not only the act of encouraging and facilitating but also the additional criminal act the perpetrator commits.... Aiding and abetting liability attaches only with the intent that the direct perpetrator commit a further, criminal, act in order to achieve the future consequence of that act." (People v. Mendoza, supra, at p. 1129, 77 Cal.Rptr.2d 428, 959 P.2d 735, italics in original.) In that vein, the Supreme Court also noted: "Unlike the act of the direct perpetrator, the act of the aider and abettor is not inherently criminal. Indeed, the aider and abettor's act may be, and often is, innocuous when divorced from the culpable mental state." (Ibid.)
Hence, in light of case law rejecting application of the doctrine of imperfect duress to negate a crime's element of specific intent (People v. Bacigalupo, supra, 1 Cal.4th at p. 126 & fn. 4, 2 Cal.Rptr.2d 335, 820 P.2d 559; People v. Kearns, supra, 55 Cal.App.4th at pp. 1135-1137, 64 Cal. Rptr.2d 654; People v. King, supra, 1 Cal.App.4th at pp. 298-299, 2 Cal.Rptr.2d 197; People v. Jacobs, supra, 230 Cal. App.3d at p. 1345, 281 Cal.Rptr. 733), we conclude Son's asserted imperfect duress did not negate the specific intent necessary for imposing culpability on Son for having aided and abetted Smann in the killings. (People v. Mendoza, supra, 18 Cal.4th at pp. 1127, 1129, 1131, 77 Cal.Rptr.2d 428, 959 P.2d 735.)

3

Conclusion
Based upon the foregoing analysis, we conclude the trial court properly denied Son's request to instruct the jury on the lesser included offense of voluntary manslaughter under the theory of "imperfect" duress.'[17]

*883 B

Exclusion of Son's Proffered Expert Testimony on False Confessions
As noted, at trial the People introduced into evidence Son's taped interviews with police and transcripts of those interviews. Testifying in his defense, Son denied participating in the killings and asserted an alibi defense. Son also testified his inculpatory statements to Detective Gallivan were false and made only because Gallivan assertedly promised that Son would be incarcerated for no more than one year.
After Son testified, the defense sought to present the expert testimony of sociologist Richard Ofshe on the subject of false confessions. Son asserted Ofshe could testify about police tactics in wearing down suspects into making false admissions. The court declined to admit Ofshe's testimony. The court stated such expert testimony was unnecessary in light of Son's testimony that he had confessed falsely due to Detective Gallivan's asserted offer of no more than one year in custody. The court also stated there was no evidence that police engaged in tactics wearing down Son into making false admissions.[18] The court noted the only issue bearing on the veracity of Son's confession was whether the jury believed Son's testimony about Gallivan's asserted offer of leniency.
Son contends the trial court reversibly erred in excluding Ofshe's testimony about false confessions. Specifically, Son asserts such proffered expert evidence was relevant on the issue of tactics employed by police to elicit confessions as tending to show why Son's statements to Gallivan were unreliable even if the jury concluded Gallivan had not promised a maximum of one year's incarceration. However, where, as here, "expert opinion is offered, much must be left to the trial court's discretion." (People v. Carpenter (1997) 15 Cal.4th 312, 403, 63 Cal.Rptr.2d 1, 935 P.2d 708; see also People v. Rowland (1992) 4 Cal.4th 238, 266, 14 Cal. Rptr.2d 377, 841 P.2d 897.) As the trial court noted, there was no evidence that police engaged in tactics wearing down Son into making false admissions. Hence, the proffered expert testimony on police tactics was irrelevant. Further, given Son's testimonial admission that his confession to Gallivan was false and made only because Gallivan assertedly promised that Son would serve no more than one year in custodya matter easily understood by a layperson without expertise (Evid.Code, § 801, subd. (a))expert evidence bearing on other potential reasons for false confessions was unnecessary. Accordingly, on this record the trial court acted within its discretion in declining to admit Ofshe's testimony. (People v. Carpenter, supra, at p. 403, 63 Cal.Rptr.2d 1, 935 P.2d 708; People v. Rowland, supra, at p. 266, 14 Cal.Rptr.2d 377, 841 P.2d 897.)

V
DISPOSITION
The judgment is affirmed.
BENKE, J., and HALLER, J., concur.
NOTES
[1] All statutory references are to the Penal Code unless otherwise specified.
[2] The bullets hit Lee in the neck, spinal cord, chest, heart, lower back, kidney, abdomen, diaphragm, and left forearm.
[3] The bullets hit Nick in the skull, upper back, jugular vein, forearm and aorta.
[4] Ricky told Detective Gallivan that the killings were a setup; Son and Smann picked up the victims; Smann pulled out a gun; the victims started running; Son grabbed and held the victims while Smann shot them; Smann used a .25 caliber handgun; and the shots were to the back of the head, neck and body.
[5] Son's girlfriend Kim testified that before she was permitted to talk to Son, Detective Gallivan told her that Son would only serve a year in county jail if Son admitted his involvement in the killings. However, on cross-examination Kim testified that once she was permitted to speak with Son, she did not mention Gallivan's purported promise. Kim also testified that during her taped three-way conversation with Son and Gallivan, neither Kim nor Son mentioned such purported promise.
[6] "Voluntary manslaughter is treated as a lesser included offense of murder." (People v. Ochoa, supra, 19 Cal.4th at p. 422, 79 Cal. Rptr.2d 408, 966 P.2d 442.)
[7] "Voluntary manslaughter, like murder, requires the intent to kill. [Citations.] What distinguishes voluntary manslaughter from murder is the absence of malice." (People v. Coad, supra, 181 Cal.App.3d at p. 1106, 226 Cal.Rptr. 386.)
[8] In People v. Reams (1997) 55 Cal.App.4th 1128, 64 Cal.Rptr.2d 654, after quoting the concept of duress set forth in section 26, we observed: "Based on the immediacy of the situation, this defense negates a criminal intent by the person under duress, rather attributing such intent to the coercing party. (CALJIC No. 4.40.)" (Id. at p. 1134, fn. 1, 64 Cal.Rptr.2d 654.)
[9] In People v. Petro, supra, 13 Cal.App.2d 245, 56 P.2d 984, we approved an instruction providing: "`You are instructed that the charge in this case is murder, which may be punishable by death, and it is no defense to the charge of murder that the defendant, Paul D. Petro, claims that he committed any act or made any of the omissions charged, under threats or menaces.'" (Id. at p. 247, 56 P.2d 984.) We concluded: "Defendant being charged with a crime which may be punished by death, the instruction correctly states the law applicable to the facts of this case. Under [former] subdivision 8 of section 26 of the Penal Code, where the crime charged may be punished with death, and the evidence clearly shows that the death penalty may be imposed, the defense that the perpetrator of the crime acted under threats or menace sufficient to show he had reasonable cause to believe, and did believe, that his life would be endangered if he refused, is not available. Under such circumstances an instruction such as given here is proper." (Id. at p. 248, 56 P.2d 984.)
[10] In People v. Pena, supra, 149 Cal.App.3d Supp. 14, 197 Cal.Rptr. 264, the court observed that "it appears settled that the duress defense is available to a defendant charged with any crime except one which involves the taking of the life of an innocent person. [Citations.] Typical case authority for this proposition is represented by holdings such as the following: `It is established by the great weight of authority that although coercion does not excuse taking the life of an innocent person, yet it does excuse in all lesser crimes.' [Citation.] `We hold that duress is an affirmative defense to a crime other than murder,...'" (Id. at p. 22, 197 Cal.Rptr. 264, italics in original.)
[11] In People v. Bacigalupo, supra, 1 Cal.4th 103, 2 Cal.Rptr.2d 335, 820 P.2d 559, the Supreme Court observed that in Flannel, "we held that an honest but unreasonable belief in the need to defend oneself from imminent peril to life or great bodily injury negates malice aforethought, the requisite mental state for murder, thus reducing that offense to manslaughter. [Citation.] In reaching that result, we reasoned that a defendant who killed under an honestly held but mistaken belief that his own life was in peril, could not harbor malice, the requisite mental state for murder. [Citation.] The absence of malice did not provide a complete defense, but rather reduced the defendant's culpability from murder to the lesser offense of manslaughter." (People v. Bacigalupo, supra, at p. 126, 2 Cal. Rptr.2d 335, 820 P.2d 559; see also People v. Anderson, supra, 233 Cal.App.3d at p. 1663, 285 Cal.Rptr. 523.)

In People v. Barton, supra, 12 Cal.4th 186, 47 Cal.Rptr.2d 569, 906 P.2d 531, the Supreme Court observed: "The sole difference between true self-defense and `unreasonable self-defense' is that the former applies only when the defendant acts in response to circumstances that cause the defendant to fear, and would lead a reasonable person to fear, the imminent infliction of death or great bodily injury (§§ 197, 198); unreasonable self-defense, on the other hand, does not require the defendant's fear to be reasonable." (Id. at pp. 199-200, 47 Cal.Rptr.2d 569, 906 P.2d 531, italics in original.) The Supreme Court observed further that unreasonable self-defense is "not a true defense; rather, it is a shorthand description of one form of voluntary manslaughter. And voluntary manslaughter, whether it arises from unreasonable self-defense or from a killing during a sudden quarrel or heat of passion, is not a defense but a crime; more precisely, it is a lesser offense included in the crime of murder. Accordingly, when a defendant is charged with murder the trial court's duty to instruct sua sponte, or on its own initiative, on unreasonable self-defense is the same as its duty to instruct on any other lesser included offense: this duty arises whenever the evidence is such that a jury could reasonably conclude that the defendant killed the victim in the unreasonable but good faith belief in having to act in self-defense." (Id. at pp. 200-201, 47 Cal.Rptr.2d 569, 906 P.2d 531.)
[12] In People v. Anderson, supra, 233 Cal. App.3d 1646, 285 Cal.Rptr. 523, the defendants claimed "they were not guilty because they were subject to `imperfect duress' from the ringleader of the `hit squad' they aided." (Id. at pp. 1662-1663, 285 Cal.Rptr. 523.) The trial court granted the defendant's request to instruct the jury on the conventional defense of duress but "refused to craft an instruction on `imperfect duress' by eliminating the requirement of an objective standard, i.e., that any duress be such as would cause `a reasonable person' to be put in fear of his life." (Id. at p. 1663, 285 Cal.Rptr. 523.) In affirming the trial court's ruling, the appellate court noted it had not found any "authority which actually holds a complete defense of 'imperfect duress' exists under California law." (Id. at p. 1665, 285 Cal.Rptr. 523.) The appellate court also concluded the defense of imperfect duress was not available to defendants because such defense was inconsistent with the felony murder rule. (Id. at pp. 1665-1666, 285 Cal.Rptr. 523.) Specifically, the appellate court stated: "Under the felony-murder rule, by definition, a manslaughter or any other killing perpetrated in the commission of a felony is first degree felony murder." (Id. at p. 1665, 285 Cal. Rptr. 523.) The appellate court explained that malice, "`the mental state which otherwise distinguishes murder from voluntary manslaughter, is not an element of felony murder. The only mental state required for felony murder is that necessary for commission of the underlying felony.'" (Id. at p. 1666, 285 Cal.Rptr. 523.)
[13] In People v. Smith, supra, 187 Cal.App.3d 666, 231 Cal.Rptr. 897, we accepted the defendant's contention that "an honest but unreasonable belief as to duress may negate the specific intent necessary for robbery and kidnapping for the purpose of robbery." (Id. at p. 679, 231 Cal.Rptr. 897.) In People v. King, supra, 1 Cal.App.4th 288, 2 Cal.Rptr.2d 197, the appellate court concluded that "Smith inappropriately extended the holding in Flannel from the context of the mental state of malice to the distinct mental state of specific intent." (Id. at p. 299, 2 Cal.Rptr.2d 197.)
[14] In People v. Anderson, supra, 233 Cal. App.3d 1646, 285 Cal.Rptr. 523, the appellate court also noted: "`Justice Tobriner's remarks in Flannel were addressed to the judicially createdand now legislatively overruledawareness-of-societal-duty component of malice aforethought.' [Citation.] With the redefinition and limitation of malice aforethought by the 1981 and 1982 amendments to Penal Code section 188 [citations], it might be doubly questionable whether a defense of imperfect duress could be conjured up from the Flannel decision by analogy." (Id. at p. 1665, 285 Cal.Rptr. 523.)
[15] In People v. McKelvy, supra, 194 Cal. App.3d 694, 239 Cal.Rptr. 782, the appellate court noted: "As an analytical matter, it may be true that an honest but unreasonable belief in the need for self-defense negates malice and therefore should preclude conviction of mayhem whether or not the conduct, without malice, amounts to a criminal offense. The same might be said in the context of homicide, that the absence of malice aforethought should excuse rather than mitigate to manslaughter even when due to a belief reasonable people would not hold. [Citation.] As Flannel did not go this far, however, there is no basis for us to do so here. The Flannel instruction states a rule of mitigation and should be applied only where mitigation is appropriate. [H] The recent case of People v. Smith (1986) 187 Cal.App.3d 666, 231 Cal. Rptr. 897 . . . held that trial courts must instruct sua sponte `whenever the evidence suggests an honest belief, which if reasonable, would absolve the defendant of liability for the charged crime. Under such circumstances, an honest but unreasonable belief may negate the appropriate specific intent element.' [Citation.] While we agree that the unreasonable belief may negate malice, we disagree with Smith to the extent that it requires use of the unreasonable belief instruction where it would serve to acquit the defendant." (Id. at p. 703, fn. 5, 231 Cal. Rptr. 897, italics in original.)
[16] Finally, we note that to the extent Son relies on People v. Bacigalupo, supra, 1 Cal.4th 103, 2 Cal.Rptr.2d 335, 820 P.2d 559, such reliance is unavailing. In that case, the defendant acknowledged at trial that "duress would not be a complete defense to murder, but argued that it should reduce criminal culpability by negating the ability to premeditate and deliberate. Accordingly, defense counsel requested the court to instruct the jury on this theory of duress and to give an additional instruction on manslaughter. Counsel also asked for permission to argue this theory to the jury. The court denied each of these requests." (Id. at p. 124, 2 Cal. Rptr.2d 335, 820 P.2d 559.) On appeal, the defendants asserted that "the threats of harm would negate the mental states necessary for first degree murder, thereby reducing his criminal culpability either to second degree murder (see Lafave & Scott, Criminal Law (1st ed.1972) § 49, p. 379 [suggesting that duress may eliminate the ability to deliberate or premeditate]) or to manslaughter (Lafave & Scott, Criminal Law (2d ed.1986) § 7.11(c), pp. 666-667 [duress may negate malice thereby reducing murder to manslaughter])." (Ibid.) The Supreme Court concluded the facts of the case did not support the instruction requested by defendant. (Ibid.) The court stated: "Without bestowing merit on defendant's theory that duress can negate premeditation and deliberation, we simply hold that in the absence of substantial evidence of immediacy of the threatened harm, the trial court did not err in refusing defendant's proffered instructions." (Id. at p. 125, 2 Cal. Rptr.2d 335, 820 P.2d 559, italics added.) Hence, People v. Bacigalupo does not help Son.
[17] Even if we were to recognize the doctrine of imperfect duress for purposes of reducing murder to voluntary manslaughter by negating malice, our conclusion would be the same because Son has not identified anything in the evidentiary record sufficient to support a finding that Son's asserted belief he had to help Smann kill the victims or else be killed by Smann was unreasonable.
[18] Specifically, the court told defense counsel: "I am not going to allow somebody to get up here and come up with reasons that do not exist in the evidence."