Filed 8/15/14  P. v. Ugalde CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B248999 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA124730) |
| v. | |
| VICTOR HUGO UGALDE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Paul A. Bacigalupo, Judge.  Affirmed.

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found defendant Victor Ugalde guilty on two counts of committing a lewd or lascivious act upon a child under the age of 14. (Pen. Code, § 288, subd. (a).) On appeal, defendant contends: (1) the trial court erred in denying his motion for a mistrial and motion for new trial, both of which contended the court should not have admitted certain evidence; (2) he was denied the effective assistance of counsel because his attorney failed to move to suppress his confession to police; and (3) the trial court erred in sustaining objections to portions of a defense expert's testimony. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize the facts in accordance with the usual rules on appeal. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1263.) In the summer of 2007, Michelle C. was 13 years old and best friends with defendant's daughter, C.U. One night, when Michelle was sleeping over at C.'s house, Michelle was sitting alone at a computer in the living room; C. was in her bedroom. Defendant approached Michelle from behind and gave her a lollipop. She took the lollipop and stood; defendant reached from behind her and put his hands on her chest. Defendant then pushed his right hand down Michelle's pants above her underwear. He moved his hand underneath her underwear and touched her vagina. Defendant moved his other hand under Michelle's shirt and touched her breast. Michelle heard defendant breathing heavily and she felt his erect penis pressed against her lower back. Defendant then removed his hands and Michelle walked away.

Michelle was shocked. She did not tell anyone what had happened because she was afraid of losing C.'s friendship. The next time she spent the night at C.'s house, she tried not to be alone. When C. went to the bathroom, Michelle stood outside in the hallway. Defendant again approached Michelle from behind, put one hand under her shirt and touched her breast and he touched her vagina with the other hand. When C. came out of the bathroom, defendant immediately took his hands out of Michelle's clothes and walked away.

When Michelle's mother, Y.S., picked Michelle up from C.'s house, Y.S. either mentioned she saw a guilty "look" on defendant's face, or asked why Michelle no longer

2

wanted to play at C.'s house as she had previously. Y.S. asked if defendant had done anything to Michelle. Michelle told Y.S. that defendant had touched her more than once. Michelle did not want Y.S. to go to the police. She had only a few friends at the time and did not want to lose C.'s friendship. Y.S. did not call the police, but she told C.'s mother. From that point on, before allowing Michelle to go to C.'s house, Y.S. spoke with C.'s mother and ensured defendant would not be there.

In 2012, Michelle and Y.S. took C. to a medical appointment. C.'s mother was working. C. had become ill and was very thin. Y.S. mentioned that the sickness seemed to coincide with defendant visiting C. Y.S. convinced Michelle it was time to talk to the police about defendant. Y.S. told the doctor that defendant had touched Michelle. The doctor indicated Y.S. had to tell a social worker, and the social worker informed Y.S. the matter had to be reported to the police.

Police interviewed defendant while he was in custody. Defendant at first denied doing anything wrong and said he had only hugged Michelle. Eventually, however, defendant said he put his hand in Michelle's pants but his hand did not "go all the way down"; on the second occasion he told himself, "What am I doing? . . . It's not right."

The jury found defendant guilty of two counts of committing a lewd or lascivious act upon Michelle, a child under 14 years old. (§ 288, subd. (a).) The trial court denied defendant's motion for new trial. The court sentenced defendant to a total prison term of eight years. This appeal followed.

## DISCUSSION

### I. Defendant's Constitutional Rights Were Not Violated by the Trial Court's Rulings Denying the Motion for Mistrial and the New Trial Motion

On appeal, defendant contends his Constitutional right to due process was violated when the trial court erroneously admitted evidence that Michelle and her mother were concerned defendant may have molested C., and when the court allowed the prosecutor to introduce a photograph showing C. and Michelle together. We find no abuse of discretion.

3

*A. Background*

On direct examination, Michelle testified she and her mother took C. to a doctor because C. "was getting very sick." The court sustained a defense objection to the question: "When you say 'sick,' what do you mean by 'sick?'" In a colloquy outside the presence of the jury, defense counsel objected to any questioning that might elicit inferences that something was wrong with C., or that defendant may have molested her. In the same discussion, defense counsel objected to the admission of a photograph that depicted Michelle and C. in 2007. Defense counsel argued the photograph was more prejudicial than probative and would be used to imply something was wrong with C. and defendant may also have molested her. The court concluded there was no sexual inference connected to admission of the photograph and it was otherwise probative. Michelle testified she and C. were depicted in the photograph from 2007, with their arms around each other and their pinky fingers linked.

On cross-examination, defense counsel asked Michelle a question about the photograph,[1] and about the events precipitating Michelle's report to police. When defense counsel asked how Y.S. secured Michelle's permission to initiate the process that eventually involved police, Michelle answered: "She was mentioning to me about how C. was getting sick ever since—"; defense counsel interrupted Michelle and the prosecutor objected. When the court indicated Michelle could finish her answer, defense counsel requested a sidebar. Defense counsel again argued Michelle should not be allowed to speculate that C.'s illness was related to defendant or that defendant had touched C. inappropriately. The court pointed out defense counsel had asked a question and Michelle answered; the court further stated it did not find there was an inference of sexual impropriety in Michelle's answer. The court denied the defense motion to strike

---

[1] Defense counsel and Michelle had the following colloquy: "Q: So you guys are close? A: Yes. Q: Just like in that picture, you guys are like interwoven? A: Yes. Q: And you're doing your – your pinkies are locked? A: Yes. Q: Did the pinkies mean something special? A: We always thought of it as, you know, the two of us are best friends."

4

the testimony. Defense counsel moved for a mistrial. The court denied the motion, concluding there was no testimony or court ruling that would "rise to the level of breach of a fair trial."

Defense counsel then asked the court to preclude any further testimony regarding C.'s health. After hearing additional argument, the court responded: "You know what, we're in the middle of your examination, and you're asking me for a motion of preclusion. At this point I'm not going to preclude you from asking what you want . . . . You asked her a question, and she was entitled to explain her answer, so how you want to follow up on that is your choice." When testimony resumed, Michelle testified: "[C.] was getting sick, and when she [Y.S.] told me that it was around the time that [defendant] had come to visit her at her apartment, I thought, isn't that kind of a coincidence? So it was then that my mom had somewhat convinced me that maybe it was time that I spoke out to the police."

When Y.S. testified on direct examination, she indicated she took C. to a doctor and said: "[C.] was so sick because the doctors couldn't figure out what was wrong with her. I said maybe the reason why is because she's being affected by similar behavior he got with my daughter. Maybe it was happening with their daughter." On cross-examination, Y.S. testified that C. was very thin at that time and Y.S. was worried about C. being so thin.

In closing, the prosecutor argued: "[Y.S.] and Michelle . . . couldn't explain why she was getting weak, and so that's why [Y.S.] . . . tells the doctor, you know, 'this happened to my daughter, so it could be what's happening here,' hoping to give an explanation. Not accusing him of doing it, but hoping to get an explanation." Following the jury verdict, defendant moved for a new trial, arguing in part that the trial court erred by admitting speculative statements regarding C.'s health. Defendant asserted Michelle "alleged that [C.]'s health drastically declined after [C.] residing with the defendant for a brief period of time in 2011. . . . These statements were highly prejudicial as they strongly suggested to the jury that the defendant's daughter was unhealthy and unhealthy due to contact with the defendant." The court denied the motion.

5

*B. Analysis*

"A motion for mistrial should be granted only when a party's chances of receiving a fair trial have been irreparably damaged. [Citation.] We review a ruling denying a motion for mistrial for abuse of discretion. [Citation.]" (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1029.) Similarly, we review a trial court's ruling on a motion for new trial " 'under a deferential abuse-of-discretion standard.' [Citation.]" (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 127.)

We find no abuse of discretion in the court's ruling allowing evidence of Michelle's and Y.S.'s reasons for finally reporting defendant's conduct with Michelle, or the admission of the 2007 photograph of Michelle and C. We disagree with defendant's contention that this evidence was irrelevant or unduly prejudicial. "Relevant evidence is evidence 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' (Evid. Code, § 210.)" (*People v. Wilson* (2006) 38 Cal.4th 1237, 1245.) The evidence explaining the circumstances of how Michelle came to report defendant's conduct to authorities—C.'s unexplained illness, and Michelle's and Y.S.'s concerns for her in light of defendant's conduct with Michelle— was relevant. The evidence explained why, after several years, Michelle and her mother finally reported defendant's conduct. Not only did this evidence complete the account of defendant's conduct and how it came to light, it was also relevant to Michelle's credibility as a witness.

Moreover, the evidence was limited and offered only in the context of explaining Michelle's testimony. There was no other evidence implying or tending to suggest that defendant had in fact engaged in any misconduct with C. The trial court did not abuse its discretion in concluding the evidence was relevant and its probative value was not outweighed by any prejudice. (*People v. Duff* (2014) 58 Cal.4th 527, 558 (*Duff*).) We thus disagree that the admission of the evidence impaired defendant's ability to receive a fair trial.

Similarly, the trial court did not abuse its discretion in admitting the photograph of Michelle and C. " 'The decision to admit victim photographs falls within the trial court's

6

discretion, and an appellate court will not disturb its ruling unless the prejudicial effect of the photographs clearly outweighs their probative value. [Citations.]' " (*People v. Rogers* (2009) 46 Cal.4th 1136, 1163 (*Rogers*); Evid. Code § 352.) The trial court here could reasonably conclude the photograph was relevant as documentary evidence of the relationship between Michelle and C., which helped explain why Michelle did not wish to report defendant's conduct in 2007. Further, the trial court acted well within the bounds of discretion in concluding defendant had not demonstrated any prejudice from the admission of the photograph. The jury heard other evidence regarding the relationship between the two girls; there is no indication in the record that the photograph would have impermissibly caused the jury to surmise defendant must have also molested C. (See *Rogers, supra,* 46 Cal.4th at p. 1163 [photographs were not unduly prejudicial where they were neutral, unremarkable, and "would not have engendered an emotional reaction capable of influencing the verdict"].) Indeed, aside from Michelle and Y.S.'s testimony that they were concerned C.'s illness may have been related to defendant, the other evidence was limited to and focused on the charged allegations which concerned only Michelle. We find no error, and conclude the trial court did not abuse its discretion in denying the motion for mistrial and motion for a new trial. Having found no error, we also reject defendant's contention that the trial court rulings violated his state and federal rights to due process of law. (*Rogers, supra,* 46 Cal.4th at p. 1162; see also *People v. DeHoyos* (2013) 57 Cal.4th 79, 120 [violations of state evidentiary rules generally do not rise to the level of federal constitutional error].)

## II. Defense Counsel's Failure to Move to Suppress Defendant's Confession Did Not Constitute Ineffective Assistance of Counsel

Defendant contends his counsel was ineffective for failing to move to suppress his confession, despite arguing the confession was coerced. We disagree.

To establish entitlement to relief based upon a claim of ineffective assistance of counsel, the burden is on the defendant to show "(1) trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in

the absence of counsel's failings." (*People v. Lewis* (1990) 50 Cal.3d 262, 288; *Strickland v. Washington* (1984) 466 U.S. 668.) A defendant establishes a reasonable probability of a more favorable determination when he persuades a reviewing court that the result of his trial was fundamentally unfair or unreliable. (*Strickland, supra,* 466 U.S. at p. 694.) " 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." [Citation.] Defendant's burden is difficult to carry on direct appeal, as we have observed: " 'Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission.' " [Citation.]' [Citation.]" (*People v. Vines* (2011) 51 Cal.4th 830, 876.)

We cannot conclude there was no rational tactical basis for defense counsel's decision not to move to suppress defendant's statements to police as involuntary. " ' "A statement is involuntary if it is not the product of ' "a rational intellect and free will." ' [Citation.] The test for determining whether a confession is voluntary is whether the defendant's 'will was overborne at the time he confessed.' " ' [Citation.] In assessing whether statements were the product of free will or coercion, we consider the totality of the circumstances, including ' " 'the crucial element of police coercion,' " ' the length, location, and continuity of the interrogation, and the defendant's maturity, education, and physical and mental health. [Citation.]" (*Duff, supra,* 58 Cal.4th at pp. 555-556.) The record does not reveal circumstances that would suggest an involuntary confession. During the interview, there were no implied threats or promises. The interview did not appear to last a notably long time. While defendant told police he felt a little dizzy, he also said he was "okay," and able to talk. Further, while defendant made some admissions, he was also in many respects equivocal, and adamant that he had not engaged in certain types of touching. This suggested his will was not overborne. (*People v. Williams* (2010) 49 Cal.4th 405, 443-444.)

Thus, at best, defense counsel may have had a weak argument in support of a motion to suppress defendant's statements. Defense counsel could reasonably conclude a motion to suppress defendant's statements to police as involuntary was unlikely to succeed, and she would instead challenge the statements by introducing expert testimony regarding factors rendering confessions unreliable, and by arguing that such factors were applicable in this case. As the People point out, this strategy would allow defense counsel to avoid "previewing" any coercion arguments to the prosecution.

" 'Competent counsel is not required to make all conceivable motions or to leave an exhaustive paper trail for the sake of the record. Rather, competent counsel should realistically examine the case, the evidence, and the issues, and pursue those avenues of defense that, to their best and reasonable professional judgment, seem appropriate under the circumstances. . . .' [Citation.]" (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1147-1148.) On the record before us, we cannot conclude there was no rational tactical purpose for defense counsel to forego moving to suppress defendant's statements to police. We therefore must reject his ineffective assistance of counsel argument.

## III.    The Trial Court Did Not Err in Limiting the Defense Expert's Testimony

Finally, defendant asserts the trial court erred in ruling his expert on confessions could not identify specific examples of "contamination" in defendant's recorded interview with police. We find no abuse of discretion. (*People v. Son* (2000) 79 Cal.App.4th 224, 241.)

*A. Background*

Defendant offered the testimony of an expert on false confessions. The trial court denied the People's motion to exclude the testimony, ruling: "He can't ultimately conclude things, but he can provide sufficient expert reasons about his – based on his training and expertise and research relative to the field of false confessions." The expert testified about the reasons false confessions occur, and he described and evaluated interrogation tactics. He also described factors that may make a suspect more likely to confess falsely, such as low IQ, mental illness, and sleep deprivation. The expert discussed the concept that interrogators try to get a suspect to offer a post-admission

9

narrative that reveals details of the crime only the perpetrator would know. But the expert indicated one problem was "contamination," which he described as "feeding the information to the suspect during the course of the interrogation before the admission so that you don't know when they make a confession whether it came from real knowledge of the crime, actually committing the crime, or whether it came from what has been told to them during the course of the interrogation." He offered hypothetical examples of contamination.

However, the prosecutor objected when defense counsel asked the expert if specific portions of defendant's recorded interrogation were examples of possible contamination. The trial court sustained the objection. In closing argument, defense counsel argued contamination was a factor in the statements defendant made to police.

*B. Discussion*

We find no error in the trial court's ruling limiting the expert's testimony. *People v. Page* (1991) 2 Cal.App.4th 161 (*Page*) considered the very issue presented here, and we are guided by the *Page* court's analysis. In *Page*, as in this case, a defense expert was allowed to testify regarding factors which may lead to an inaccurate or false statement during an interrogation, but the court did not allow the expert to specifically relate those principles to the defendant's statements. (*Id.* at p. 183.) The appellate court rejected the defendant's arguments that the trial court's limitations on the expert testimony prevented him from presenting a complete defense and that the restrictions were an abuse of discretion under the Evidence Code. As defendant argues here, the *Page* defendant contended *Crane v. Kentucky* (1986) 476 U.S. 683 (*Crane*), applied and rendered the trial court's ruling invalid.

10

In *Crane*, the case against the defendant rested almost entirely on the defendant's confession. (*Crane, supra,* at p. 685.) The defendant sought to introduce evidence regarding the circumstances of the confession, such as the length of the interrogation and the manner in which it was conducted, to show that the confession was not credible. (*Id.* at pp. 685-686.) The trial court excluded this evidence. (*Id.* at p. 686.) The Supreme Court concluded the ruling violated the defendant's Constitutional rights. The court explained the lower courts erred in foreclosing the defendant's "efforts to introduce testimony about the environment in which the police secured his confession . . . . [E]vidence about the manner in which a confession was obtained is often highly relevant to its reliability and credibility." (*Id.* at p. 691.) The court further noted the respondent had not "advanced any rational justification for the wholesale exclusion of this body of potentially exculpatory evidence," and the decision had to be reversed. (*Ibid.*)

The *Page* court distinguished *Crane* because, unlike the defendant in *Crane*, the *Page* defendant was not subject to a blanket exclusion of proffered testimony about the circumstances of the defendant's confession. (*Page, supra,* at p. 185.) In *Page*, the defendant was allowed to present evidence regarding the "physical and psychological environment in which the confession was obtained." (*Id.* at pp. 185-186.) Likewise, in this case, defendant was not prevented from exploring the circumstances of his interrogation. *Crane* does not assist his arguments on appeal.

Further, in *Page*, the court found the trial court did not abuse its discretion in limiting the expert's testimony to general factors relating to false confessions. Referring to *People v. McDonald* (1984) 37 Cal.3d 351, overruled on another ground by *People v. Mendoza* (2000) 23 Cal.4th 896, 914, which concerned expert testimony on the accuracy of eyewitness identifications, the *Page* court noted the California Supreme Court "did not hold that a court must permit the expert to discuss the particular evidence in the case or give his opinion on the reliability of particular eyewitness testimony . . . . Moreover, the court seemed to indicate the expert would usually be limited to discussing general factors bearing on the accuracy of eyewitness testimony in a 'typical case.' " (*Page, supra,* 2 Cal.4th at p. 188.) The *Page* court explained that, consistent with *McDonald*, the trial

11

court had limited the expert's testimony to "a discussion of 'certain factors that may affect [the reliability of a confession] in a typical case.' [Citation.] In our view, nothing in *McDonald* or the Evidence Code required the court to permit [the expert] to discuss the particular evidence in this case or to give his opinion regarding the overall reliability of the confession." (*Page, supra,* at p. 188.)

The *Page* court additionally explained that "an expert's thorough description of the general principles to be applied in a given case may make additional (and more specific) expert testimony superfluous . . . . In such a case, ' "[t]here is no necessity for [additional expert] evidence, and to receive it would tend to suggest that the judge and jury may shift responsibility for decision to the witness[ ]." ' [Citation.]" (*Page, supra,* at pp. 188-189.) The court thus concluded the expert "outlined the factors which might influence a person to give a false statement or confession during an interrogation. Having been educated concerning those factors, the jurors were as qualified as the professor to determine if those factors played a role in [the defendant's] confession, and whether, given those factors, his confession was false." (*Id.* at p. 189.)

The above reasoning is equally applicable in this case. The trial court was not required to allow the defense expert to opine on specific portions of defendant's recorded interview. The expert outlined the general principles to be applied when considering the reliability of a confession. The jurors were equally qualified to determine if the factors identified played a role in defendant's statements to police. The court did not abuse its discretion in limiting the expert testimony. We reject defendant's claim that the ruling violated his right to due process.[2]

---

[2] We have concluded the court did not err in its rulings. Thus, we reject defendant's contention that cumulative error mandates reversal. (*People v. Williams* (2013) 56 Cal.4th 165, 201.)

**DISPOSITION**

The trial court judgment is affirmed.

                                  BIGELOW, P.J.

We concur:

        RUBIN, J.

        GRIMES, J.